**Anthony SUTERA, Plaintiff–Appellant,**

v.

**SCHERING CORPORATION,
Defendant–Appellee.**

**No. 377, Docket 95–7336.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 11, 1995.

Decided Dec. 28, 1995.

**14**

Kevin D. Moloney, White Plains, New York (Benjamin R. Anker, White Plains, New York, on the brief), for plaintiff-appellant.

Thomas D. Ruane, New York City (Leslie A. Lajewski, Robinson, St. John & Wayne, New York City, on the brief), for defendant-appellee.

Before: NEWMAN, Chief Judge, LUMBARD and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

We consider whether, in the circumstances presented, it was appropriate to enter summary judgment for defendant on plaintiff's claims of age discrimination. Plaintiff Anthony J. Sutera brought this action against his former employer, defendant Schering Corporation ("Schering"), alleging termination of his employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1988) ("ADEA"), and the New York Human Rights Law, N.Y. EXEC. LAW § 290 *et seq.*[1] The United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*) granted summary judgment in favor of defendant and dismissed plaintiff's claims on the ground that Schering had asserted an adequate basis for Sutera's discharge.

On appeal, Sutera contends that summary judgment was inappropriate because (1) he established a *prima facie* case of unlawful age discrimination, and (2) there exist genuine issues of material fact as to whether defendant's articulated reason for discharging plaintiff was a pretext for discrimination. We agree and therefore vacate the judgment and remand the cause for further proceedings.

## I. BACKGROUND

The following facts are not disputed by the parties. Sutera was hired by Schering in 1961 and worked as a sales representative for Schering for more than thirty years. His duties included marketing Schering's pharmaceutical products by visiting physicians and providing them with information and product samples.

---

1. Plaintiff's complaint also named Schering–Plough Corporation as a defendant. The parties agreed to the dismissal of the claims against Schering–Plough on December 7, 1994.

Since the passage of the Prescription Drug Marketing Act of 1987, 21 U.S.C. § 301 *et seq.,* the provision of samples to physicians has been strictly regulated by the federal government. The statute requires pharmaceutical companies to keep precise records of the distribution of pharmaceutical products. *See* 21 U.S.C. § 353(d)(2)(B). Under Schering's compliance policy, orders from physicians for Schering samples are submitted to Schering on so-called Focus Cards. Schering requires that a physician sign the Focus Cards and that the sales representative mail to Schering on a daily basis the signed Cards he has collected. When Sutera visited a physician's office he would either witness the physician signing the Focus Cards or give the Cards to a member of the physician's staff to bring it to the physician for signature.

The events leading to Sutera's termination began on June 16, 1992, when Sutera was making calls to customers with his immediate supervisor, Annabelle Suarez. After Sutera and Suarez made several calls, Suarez discovered signed, unsubmitted Focus Cards—dated weeks or months before—in the back of Sutera's car. Suarez immediately questioned Sutera about the Cards. Sutera explained that on occasion a physician would sign in the wrong signature box or Sutera would misplace a signed original. Sutera would request that the physician sign an additional Card, submit this second Card to Schering, and retain the original. Following her discovery of the unsubmitted Focus Cards, Suarez compared the physician signatures on the unsubmitted cards to the signatures on Sutera's submitted cards and found discrepancies. Suarez obtained written statements from three physicians who asserted that the signatures appearing on the Focus Cards found in Sutera's car were not their own.

Sutera was fired on July 31, 1992. He was informed that he was being discharged because of the irregularities in physician signatures on Focus Cards. After he was fired, Sutera obtained a statement from one of the three doctors from whom Suarez had previously obtained a written statement to the effect that a disputed signature might actually be genuine.

At the time of his discharge, Sutera was sixty-six years old. He was making a base salary of $47,300, plus commissions and a share in a profit sharing plan. In addition, he was entitled to six weeks of yearly vacation, ninety days per year in sick time, and other benefits. Newly hired sales representatives begin their employment at approximately half of Sutera's base salary, do not make commissions, do not participate in profit sharing, and are entitled only to two weeks of yearly vacation and minimal sick leave. Sutera was replaced by a younger individual at a lower base salary.

Sutera filed this action on August 23, 1994. At a status conference on November 11, 1994, the parties agreed to a discovery schedule, under which interrogatories and requests for production of documents were to be served by December 31, 1994, and responses were to be served by January 30, 1995. Discovery was to be completed by May 30, 1995.

On December 27, 1994, before any discovery had taken place, Schering moved for summary judgment. Although the district court did not enter an order barring discovery while the motion was under consideration, the parties effectively abandoned their discovery schedule during the pendency of the motion for summary judgment. On March 7, 1995, the district court entered a Memorandum and Order granting Schering's motion and dismissing Sutera's complaint in its entirety. This appeal followed.

## II. DISCUSSION

### A. *Standard of Review*

We review the district court's grant of summary judgment *de novo. Gallien v. Connecticut Gen. Life Ins. Co.,* 49 F.3d 878, 881 (2d Cir.1995). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, "the court cannot *try*

issues of fact but can only determine whether there *are* issues of fact to be tried." *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984) (internal quotation marks omitted). The district court must draw all reasonable inferences and resolve all ambiguities in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party. *Taggart v. Time Inc.*, 924 F.2d 43, 46 (2d Cir.1991).

B. *Employment Discrimination and Burden–Shifting Analysis*

■ The ADEA makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1); *see Johnson v. New York*, 49 F.3d 75, 78 (2d Cir.1995). Where a plaintiff alleges discharge from employment in violation of the ADEA, the three-step burden-shifting test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), a decision under Title VII of the Civil Rights Act of 1964, supplies the appropriate analytical framework. *See Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).[2] First, the plaintiff must present a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825. If the plaintiff does so, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. *Id.*; *Gallo*, 22 F.3d at 1224. The burden at this phase is one of production rather than persuasion. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 257, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). If the defendant carries this burden of production, the plaintiff must show that the defendant's articulated reason for its decision is in fact a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

We find that plaintiff has met his burden of establishing a *prima facie* case of age

discrimination and that defendant has articulated a nondiscriminatory reason for its decision. The question presented is whether the district court properly entered summary judgment in these circumstances. Once the plaintiff presented a *prima facie* case, the district court could only have entered summary judgment in defendant's favor if it determined that no rational trier of fact could find the articulated basis for the plaintiff's discharge to be a pretext for discrimination. Such a conclusion was not proper on the record before the district court.

1. *Step 1: Plaintiff's Burden to Establish the* Prima Facie *Case*

■ To make a *prima facie* showing of wrongful discharge under the ADEA, a plaintiff must demonstrate: "(1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he was discharged, and (4) that the discharge occurred under circumstances giving rise to an inference of age discrimination." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 204 (2d Cir.1995) (internal quotation marks omitted). "[T]he showing the plaintiff must make as to the elements of the prima facie case in order to defeat a motion for summary judgment is *de minimis.*" *Id.* (internal quotation marks omitted).

■ In the present case, Sutera opposed Schering's motion for summary judgment by submitting to the district court sworn statements sufficient to make the requisite *prima facie* showing. The ADEA protects persons forty to seventy years of age. 29 U.S.C. § 631(a). At the time Sutera was fired, he was sixty-six years old. Sutera was qualified for his position. He had thirty-one years of experience as a sales representative with Schering and had received numerous awards for excellent performance, including the Distinguished District Representative of the Year Award just eighteen months prior to his discharge. Sutera claims, moreover, that (1) Jesus Leal, his supervisor in 1990 and 1991, made harassing and demeaning references to his age; (2) despite Sutera's receipt of the

---

**2.** The same analysis applies to claims under the New York Human Rights Law. *See Miller Brewing Co. v. State Div. of Human Rights*, 66 N.Y.2d 937, 938–39, 498 N.Y.S.2d 776, 489 N.E.2d 745 (1985).

Distinguished District Representative of the Year Award, Leal informed him that his sales performance was unacceptable and established a remedial "Performance Enhancement Program" for him; (3) Sutera had declined three offers of early retirement; and (4) Sutera's position was filled with a younger employee at a substantially lower salary. Sutera's sworn statements were sufficient to permit a rational trier of fact to infer that age was a factor in his discharge. Sutera has thus made the *de minimis* showing required to establish a *prima facie* case of age discrimination.

### 2. Step 2: Defendant's Burden to State a Legitimate Non–Discriminatory Reason

■ Once Sutera established his *prima facie* case, the burden shifted to Schering to articulate a reason for discharging Sutera that, if believed by a trier of fact, would support a finding that unlawful discrimination was not the basis for the employment action. As Sutera concedes, Schering articulated just such a reason: Sutera's alleged forgery of physician signatures.

### 3. Step 3: Plaintiff's Opportunity to Show Pretext for Discrimination

Once the defendant carries its burden of production by articulating a legitimate reason for the plaintiff's discharge, "[t]he plaintiff then has the full and fair opportunity to demonstrate, through presentation of his own case and through cross-examination of the defendant's witnesses, that the proffered reason was not the true reason for the employment decision," but was in fact a pretext for discrimination. *St. Mary's Honor Ctr.,* 509 U.S. at ——, 113 S.Ct. at 2747 (internal quotation marks omitted); *see Gallo,* 22 F.3d at 1225. "[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors." *Cronin,* 46 F.3d at 203. The trier of fact decides the ultimate question of whether the plaintiff has proven that the defendant intentionally discriminated against

him. *St. Mary's Honor Ctr.,* 509 U.S. at ——, 113 S.Ct. at 2749.

■ By granting Schering's motion for summary judgment, the district court did not permit Sutera to proceed with the presentation of his case. The court thus apparently concluded that no rational trier of fact could find that the articulated basis for Sutera's discharge—his alleged forgery of physician signatures—was a pretext for discrimination. We disagree.

The district court did not refer to the *McDonnell Douglas* burden-shifting principles, nor indicate whether Sutera had made the requisite *prima facie* showing. Instead, it gave the following reason for dismissing Sutera's claims:

> Use of a signature other than a physician or physician's staff contrary to statute and the employer's policy is an adequate basis for dismissal.

> Plaintiff has had an opportunity to interview the physicians involved and two of the three have failed to modify their position. While other discovery has not been had, plaintiff would be in a position to provide any available explanation for presence of outdated and improperly signed cards in his car and has not done so.

It thus appears that the district court concluded that Schering had "come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject" as pretextual. *Cronin,* 46 F.3d at 203. On this record, we cannot agree with any such conclusion.

First, the district court's characterization of Sutera's actions as "contrary to statute and the employer's policy" is not supported by the record. Schering's investigation appears to have focused on the authenticity of physician signatures on the unsubmitted Focus Cards found in Sutera's car, not on the signatures found on Focus Cards that Sutera *actually submitted* to Schering. When questioned about the presence of these Cards in his car, Sutera explained that they were misplaced or improperly signed Cards. In effect, Sutera explained that they were in his car precisely because he had not thought

them fit for submission. Sutera's maintenance of discarded Focus Cards in his car—with or without authentic signatures—does not violate federal law or any policy articulated by Schering. In these circumstances, we cannot conclude that the evidence produced by Schering of its reason for firing Sutera is "evidence ... as to which there is no genuine issue and which no rational trier of fact could reject," *id.*, warranting the entry of summary judgment in its favor.

Second, Schering points to Sutera's asserted admission that some of his submitted cards may have been signed by persons other than the physician outside of Sutera's view. Schering contends that submitting a Focus Card signed by a member of the physician's staff would itself indisputably violate company policy and provide a dispositive nondiscriminatory reason for discharging Sutera that no rational trier of fact could reject as pretextual. We disagree. Sutera claims that Schering's managerial staff witnessed and condoned the practice of obtaining a physician's signature by allowing personnel of the doctor's office to present the Focus Card for signing and leaving the samples upon their return of the signed Cards.

In attempting to demonstrate that its articulated reason for discharging Sutera was dispositive, Schering proffered as evidence statements that it drafted and presented to various physicians. Those statements read in part as follows: "Annabelle Suarez has asked me to verify whether this signature has been signed by me *or any other person in my office staff.*" (Emphasis supplied.) This statement, standing alone, would support an inference that Schering's true policy did not require the physician personally to sign the Focus Card. In sum, if Schering did condone the practice described by Sutera, a rational trier of fact could find Schering's articulated reason for firing Sutera to have been pretextual.

The district court did not, in any event, afford Sutera an opportunity to demonstrate that his alleged forgery of physicians' signatures was not the true reason he was discharged, but was merely a pretext and that his discharge was motivated by discrimination. Sutera maintains that discovery would have allowed him to obtain evidence showing that Schering's policies and practices permitted his method of obtaining signatures on Focus Cards. A party opposing a motion for summary judgment "must have 'had the opportunity to discover information that is essential to his opposition' to the motion." *Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250 n. 5, 106 S.Ct. at 2511 n. 5). Summary judgment was entered before any discovery had taken place. In these circumstances, it cannot be said that plaintiff had a full and fair opportunity to show that Schering's articulated reason for his dismissal was pretextual.

### III. CONCLUSION

For the reasons stated above, the order of the district court entering summary judgment is vacated, and the cause is remanded for further proceedings consistent with this opinion.