**Everett W. BERGER, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Defendant–Appellant.**

**No. 1059, Docket 95–6202.**

United States Court of Appeals, Second Circuit.

Argued Feb. 15, 1996.

Decided June 25, 1996.

Kevin M. Flynn, New York City (Kostelanetz & Fink, L.L.P., New York City, of counsel), for Plaintiff–Appellee.

Pamela C. Berry, Attorney, Tax Division, Department of Justice, Washington, D.C. (Loretta C. Argrett, Assistant Attorney General, Gary L. Allen, Kenneth L. Greene, Attorneys, Tax Division, Department of Justice, Washington D.C., Christopher F. Droney, United States Attorney for the District of Connecticut, Hartford, Connecticut, of counsel), for Defendant–Appellant.

Before: MAHONEY, WALKER, and CALABRESI, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant the United States of America (the "United States") appeals from a judgment entered March 14, 1995 in the United States District Court for the District of Connecticut, Alfred V. Covello, *Judge*, that granted summary judgment to plaintiff-appellee Everett W. Berger in the amount of $105,000, plus interest, in his action to recover a civil tax penalty that he had previously paid to the United States, *see Berger v. United States*, No. 3:94CV00051 (AVC), slip op. at 16 (D.Conn. Mar. 10, 1995), and from an order entered June 21, 1995 that denied the United States' motion to alter or amend the court's judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

### Background

Berger is an attorney who specializes in the pension and profit sharing field. In 1987 and 1988, Berger's clients included twenty-three corporate employers that maintained pension plans for their employees. In the course of representing these corporate clients, Berger submitted a Form 5300 (Application for Determination for Employee Benefit Plan), to the Internal Revenue Service (the "IRS") on behalf of each of them. The Forms 5300 and accompanying documentation[1] provided certain information to the IRS about the pension plans, and requested the IRS to issue a determination that the pension plans were entitled to qualified status for federal taxation purposes. *See* I.R.C. § 401(a). Qualified pension plans receive preferential treatment under the Internal Revenue Code. Specifically, a qualified plan is exempt from taxation under I.R.C. § 501(a); a plan beneficiary is not taxed on

---

1. Each Form 5300 was accompanied by additional documentation, including a Form 2848 (Power of Attorney and Declaration of Representative), a Form 5300 Schedule T (Supplemental Application for Approval of Employee Benefit Plans under TEFRA (and/or), TRA 1984, REA, and TRA 1986), Form 5302 (Employee Census), the corporation's pension plan (including a trust agreement), and a resolution of the corporation's board of directors adopting the restated plan.

contributions when made to the plan on his behalf, but only when distributions are made to him from the plan, pursuant to § 402(a); and an employer maintaining such a plan may deduct his contributions to the plan from his taxable income pursuant to § 404(a). *See Wachtell, Lipton, Rosen & Katz v. Commissioner,* 26 F.3d 291, 293 (2d Cir.1994) ("As qualified plans, the [pension] plans were tax exempt, *see* [I.R.C.] § 501(a), and contributions to the plans which met all applicable requirements were tax deductible, *see id.* § 404(a).").

In the 1980s, Congress enacted several statutes that amended the requirements for a pension plan to be deemed qualified under the Internal Revenue Code. *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 324 (1982) ("TEFRA"); Tax Reform Act of 1984, Pub.L. No. 98–369, 98 Stat. 494 (1984) ("TRA 1984"); Retirement Equity Act of 1984, Pub.L. No. 98–397, 98 Stat. 1426 (1984) ("REA"). As a result, Berger's clients needed to amend their pension plans in order to retain qualified status. Pension plans were required to be amended by a specific compliance date in order to be treated as retroactively qualified for the tax years of 1984 and 1985. The compliance date applicable to all of Berger's clients was June 30, 1986.

The Forms 5300 submitted by Berger indicated that the plans had been amended prior to July 19, 1985, well before the applicable compliance date. However, the IRS detected several irregularities in the submissions which caused it to conclude that the documents had been prepared after the compliance date and backdated. Specifically, the IRS noted that at least one of the following irregularities was present in each submission: (1) The plan documents contained language identical to that contained in certain temporary regulations promulgated on July 19, 1985, while the documents indicated that they had been adopted before that date. (2) The plan documents contained a provision identical to technical corrections to TRA 1984 and REA that were signed into law on October 22, 1986, while the documents indicated that they had been adopted before that date. (3) The plan documents indicated that the board of directors had adopted them prior to the date when the applicable regulations and/or laws were issued. (4) The Form 5300 indicated that it had been signed prior to the preprinted revision date of the form. (5) The Form 2848 (Power of Attorney and Declaration of Representative) indicated that it had been executed prior to the preprinted revision date of that form.

Because the IRS concluded that the plans had, in fact, been amended only after their applicable compliance date, it determined that each of the affected plans had lost its qualified status for several tax years. However, each of the plan sponsors had deducted its contributions to its plan from its taxable income during the disqualified years. Because such a deduction is available only for qualified pension plans, the plan sponsors all understated their tax liabilities for those years.

The IRS determined that because Berger had assisted in the preparation of the backdated Forms 5300 and accompanying documentation, he was liable for penalties pursuant to I.R.C. § 6701(a).[2] By letter dated May 21, 1993, the IRS notified Berger that it

---

2. Section 6701(a) provides as follows:
  Any person—
  (1) who aids or assists in, procures, or advises with respect to, the preparation or presentation of any portion of a return, affidavit, claim, or other document,
  (2) who knows (or has reason to believe) that such portion will be used in connection with any material matter arising under the internal revenue laws, and
  (3) who knows that such portion (if so used) would result in an understatement of the liability for tax of another person, shall pay a penalty with respect to each such document in the amount determined under [§ 6701(b)].

Section 6701(a) was amended by the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, tit. VII, § 7735(a), 103 Stat. 2106, 2403, to delete "in connection with any matter arising under the internal revenue laws" after "document" in subsection (a)(1), to add "(or has reason to believe)" in subsection (a)(2), and to substitute "would result" for "will result" in subsection (a)(3). On the record presented on this appeal, it is unclear whether these amendments apply in this case. In any event, they do not affect the outcome of the appeal.

was assessing penalties against him in the total amount of $700,000.[3]

In accordance with § 6703(c)(1) of the Internal Revenue Code,[4] Berger paid fifteen percent of the $700,000 penalty, $105,000, and filed an administrative claim for refund with the IRS. After waiting six months, during which time the IRS took no action on Berger's claim, Berger instituted the present action in the United States District Court for the District of Connecticut on January 13, 1994 pursuant to § 6703(c)(2), *supra* note 4.

On May 26, 1994, the district court granted a joint motion by both parties for the suspension of discovery until the district court ruled on Berger's motion for summary judgment on purely legal questions. Berger then filed a motion for summary judgment, arguing that he was entitled to judgment as a matter of law. The United States filed a cross motion for partial summary judgment on the question whether the penalties it assessed against Berger were impermissibly duplicative.

On March 10, 1995, the district court granted Berger's motion for summary judgment. *See Berger*, slip op. at 16. The United States timely appealed.

### Discussion

The district court based its ruling in favor of Berger on two alternative grounds. First, the district court held that because a Form 5300 does not directly give rise to tax liability, but rather merely discloses information

and requests a determination of qualified status on the part of the IRS, an individual cannot *"know* [ ] that [the filing of a Form 5300] would result in an understatement of the liability for tax of another person," as required by § 6701(a)(3) (emphasis added), even if such understatement does in fact ultimately result. *See Berger*, slip op. at 9–12. Second, the court concluded that even if falsification of a Form 5300 could give rise to a § 6701 violation, the United States failed in this case to meet its burden of establishing genuine issues of fact (within the meaning of Rule 56(c) of the Federal Rules of Civil Procedure) regarding Berger's liability for the Form 5300 filings. *See Berger*, slip op. at 12–15. We examine these issues in turn.

A.  *Applicability of § 6701 to Falsification of Forms 5300.*

■ The district court reasoned that the very title of the forms prepared by [Berger], "Request for Determination," implies that a request is being made of the IRS, not that a statement regarding tax liability is being submitted. The reason form 5300 is filed is to obtain a determination as to the qualified status of a pension or profit sharing plan. The form 5300 request is primarily informational in nature.

*Berger*, slip op. at 10. The district court concluded that "[a]ssuming, arguendo, that [Berger] backdated the documents, ... the filing of the form, without a showing of more, cannot serve as the basis for a conclusion

---

3.  The IRS later partly allowed Berger's request for abatement of the penalty, reducing the amount demanded to $540,000 by letter dated January 31, 1994.

4.  Section 6703(c) provides in pertinent part:

(c) **Extension of period of collection where person pays 15 percent of penalty**
(1) **In general**
If, within 30 days after the day on which notice and demand of any penalty under section 6700 or 6701 is made against any person, such person pays an amount which is not less than 15 percent of the amount of such penalty and files a claim for refund of the amount so paid, no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution of a proceeding begun as pro-

vided in paragraph (2).... Nothing in this paragraph shall be construed to prohibit any counterclaim for the remainder of such penalty in a proceeding begun as provided in paragraph (2).
(2) **Person must bring suit in district court to determine his liability for penalty**
If, within 30 days after the day on which his claim for refund of any partial payment of any penalty under section 6700 or 6701 is denied (or, if earlier, within 30 days after the expiration of 6 months after the day on which he filed the claim for refund), the person fails to begin a proceeding in the appropriate United States district court for the determination of his liability for such penalty, paragraph (1) shall cease to apply with respect to such penalty, effective on the day following the close of the applicable 30-day period referred to in this paragraph.

that the preparer knew an understatement of the tax liability of another would result." *Id.* at 14–15.

We disagree with this analysis. A preparer of a Form 5300 would usually know, as the district court recognized, that the form "will be used in connection with a[ ] material matter arising under the internal revenue laws" within the meaning of § 6701(a)(2), to wit, the determination of the exempt status of the pension plan with respect to which the Form 5300 is filed. The preparer would further ordinarily know, in the case of a false Form 5300 whose use would predictably result in an erroneous determination of a plan's exempt status, that this use of the form "would result in an understatement of the liability for tax of another person" within the meaning of § 6701(a)(3); to wit, the liability of a corporation or other plan sponsor that deducts contributions which it makes to the plan, and the liability of a plan beneficiary in whose behalf contributions are made to the plan and who fails to report those contributions as taxable income.

Berger contends that the decision of the district court on this issue is "clearly supported" by *In re Mitchell (Mitchell v. United States)*, 977 F.2d 1318 (9th Cir.1992). In that case, the IRS attempted to impose a penalty with respect to a false tax return for an S corporation, and for false Forms K–1 by which allocated shares of the S corporation's taxable income were reported to the corporation's shareholders. *See id.* at 1320 ("[A]n S corporation simultaneously affords the advantages of the corporate business form and the partnership tax regime." (citing *Cornelius v. Commissioner*, 494 F.2d 465, 468–69 (5th Cir.1974))). The court ruled that liability could be imposed as to the Forms K–1, 977 F.2d at 1323, but not as to the corporate tax return, stating: "As a corporation, [the S corporation] had no tax liability to understate. The $10,000 corporate penalty provision cannot possibly apply." *Id.* at 1322–23.

The "corporate penalty provision" at issue in that case was § 6701(b)(2), which imposes a $10,000 penalty "[i]f the return, affidavit, claim, or other document relates to the tax liability of a corporation." The S corporation in *Mitchell* had no corporate tax liability, as

the Ninth Circuit properly discerned, so § 6701(b)(2) was by its terms inapplicable. In this case, by contrast, the forms 5300 "relate to" the corporate tax liability of the sponsors of the pension plans within the meaning of § 6701(b)(2), and "would result in an understatement of the tax liability" of those sponsors within the meaning of § 6701(a)(3).

The district court distinguished *Mitchell*'s ruling that Forms K–1 can provide a basis for § 6701 liability, stating that these forms

are informational returns relied on by taxpayers in completing their individual income tax returns.... [A]n individual taxpayer cannot place the same reliance on a [Form 5300] as he or she can place in a tax statement that purports to represent the taxable income or deductions to be included on a tax return, such as a partnership K–1.

*Berger,* slip op. at 11–12. The question under § 6701, however, is not the nature or extent of another taxpayer's reliance upon the document at issue, but rather whether the preparer knows or has reason to believe that the document "will be used in connection with any material matter arising under the internal revenue laws," § 6701(a)(2), and further knows that "if so used," it "would result in an understatement of the liability for tax of another person," § 6701(a)(3).

We note that the district court did not reach, and we do not address on this appeal, the issue of multiple penalties that was posed below by the United States' motion for summary judgment. As *Mitchell* points out, "§ 6701(a)'s broad language—'a penalty with respect to each such document'—could impose entirely disproportionate liability." 977 F.2d at 1322. Accordingly, in pointing out that each erroneous Form 5300 could impact upon the tax liability of both plan sponsors and plan beneficiaries (and in each case for multiple tax periods), we do not wish to be understood as deciding, or even addressing, the question whether separate penalties may be imposed as to each such taxpayer and taxable period. *Cf. Mattingly v. United States,* 924 F.2d 785, 792–93 (8th Cir.1991) (imposing § 6701 penalties as to taxable year to which valuation overstatements directly

pertained, but precluding penalties for carry-forward and carryback of resulting tax credits to other taxable years).

B. *Failure of the United States to Meet its Burden of Proof.*

 The district court's alternate ground for granting summary judgment in favor of Berger was that the United States failed to establish genuine issues of fact regarding its assertions that Berger actually backdated the forms at issue, that he knew the documents were backdated, and that he knew that the backdating would result in the understatement of another person's tax liability. *See Berger,* slip op. at 12–15.

 The district court correctly noted that "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof,' then summary judgment is appropriate." *Id.* at 6 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)) (alterations in *Berger* ). However, the district court did not wait until "after discovery" to grant summary judgment. As noted above, the district court had granted a joint motion by the parties staying discovery until after the district court decided the legal issues presented by the cross-motions for summary judgment.

 "The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202 (1986)). While "the trial court may properly deny further discovery if the nonmoving party has had a fully adequate opportunity for discovery," *id.,* the district court made no such finding here. On the contrary, the district court's order granted the parties' request to stay all discovery "until there is a final determination on [Berger's] motion for partial summary judgment," and there has been no discovery as yet in this action. Thus, we cannot conclude that the parties had already had "a fully adequate opportunity for discovery" when the district court granted summary judgment. *Id.* "In short, the grant of summary judgment here was premature." *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995); *see also Sutera v. Schering Corp.,* 73 F.3d 13, 18 (2d Cir.1995) (reversing summary judgment entered before any discovery had taken place).

## Conclusion

We reverse and remand for further proceedings not inconsistent with this opinion.