**Joseph HERZOG, Miriam Herzog and Jeffrey Herzog, Plaintiffs,**

v.

**George WILL, et al., Defendants.**

**No. 96 Civ. 0549 (CLB).**

United States District Court,
S.D. New York.

July 23, 1996.

Jonathan Lovett, Lovett & Gould, White Plains, NY, Robert M. Lefland, Frum, Lefland & Fisher, L.L.P., Tarrytown, NY, for Joshua Herzog, Miriam Herzog.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Jeffrey Herzog.

Daniel Joel Schneider, Drake, Sommers, Loeb, Tarshis & Catania, P.C., Newburgh, NY, for George Will et al.

Rochelle J. Auslander, Anderson, Banks, Curran & Donoghue, Mount Kisco, NY, Joseph A. Catania, Jr., Daniel Joel Schneider, Drake, Sommers, Loeb, Tarshis & Catania, P.C., Newburgh, NY, Robert M. Lefland, Frum, Lefland & Fisher, L.L.P., Tarrytown, NY, Henri Shawn, Baum & Shawn, Monticello, NY, for Monticello Central School District.

Monte J. Rosenstein, Rosenstein & Helhoski, P.C., Middletown, NY, for police officer defendants and Village of Monticello.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

In this civil rights action pursuant to 42 U.S.C. § 1983 with supplemental New York State claims, filed January 25, 1996, certain of the defendants, hereinafter "the School Board defendants" to distinguish them from the "police defendants," moved for summary judgment based on a claim of qualified immunity. The motion was heard before this Court on July 12, 1996, and the Court concluded that an appropriate resolution of the motion was impossible until such time as plaintiffs have had a reasonable opportunity to take discovery. The Court continued the motion for all purposes until September 27, 1996, with the expectation that the plaintiff, and indeed all parties, could supplement their motion papers with the results of pretrial discovery to be taken in the interim period. Since the motion, if granted, would probably result in dismissal without prejudice of the supplemental state claims, that discovery is not wasted since it can be used in connection with the supplemental claims in the New York courts.

No objection was taken to this disposition by the Court. However, by letter docketed July 18, 1996, the moving defendants for the first time objected to the procedure being followed.

The letter, which this Court treats as a motion to reargue, reads in relevant part as follows:

"We are the attorneys for defendants George Will, Ivan Katz, Eileen Casey, Jean Rosenheck, Jack Leshner, Peter Calahan, Richard Feller, Vivian Liff, Alyce Vanetten, Neil Muscatiello, and the Monticello Central School District in the above referenced matter.

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 alleging violations of their constitutional rights as protected by the First, Fourth and Fourteenth Amendments arising from school disciplinary action taken against Joshua Herzog, a student at Monticello High School, the arrest of Joshua Herzog, and an alleged illegal search of the Herzog residence.

We brought a motion for summary judgment on behalf of the defendant school official requesting that the Court grant qualified immunity to these defendants. The return date was July 12, 1996. At oral argument on that date your Honor stated that you would not decide the motion at that time but would reserve decision until September 27, 1996 so that discovery in this matter could be concluded. You did not issue an order denying the motion.

The defendant school officials have the right to request qualified immunity prior to discovery. *Mitchell v. Forsyth,* 472 U.S. 511, 526, [105 S.Ct. 2806, 2815, 86 L.Ed.2d 411] (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 817–818 [102 S.Ct. 2727, 2738, 73 L.Ed.2d 396] (1982). Qualified immunity protects officials from undergoing the costs of trial and the burdens of discovery. *Mitchell* [472 U.S.] at 526 [105 S.Ct. at 2815;] *Harlow* [457 U.S.] at 817–818 [102 S.Ct. at 2738.] Until the threshold issue of qualified immunity is resolved, discovery should not be allowed. *Harlow* at 818 [102 S.Ct. at 2738.] Even the issues regarding the alleged illegal arrest and search are subject to qualified immunity. *Anderson v. Creighton,* 483 U.S. 635 [107 S.Ct. 3034, 97 L.Ed.2d 523] (1987). In *Musso v. Hourigan,* 836 F.2d 736, 741 (2d Cir.1988) the Second Circuit found that a refusal to consider the request for qualified immunity requires a remand to the District Court to consider the qualified immunity issue.

Pursuant to the foregoing, defendant school officials respectfully request that the court reconsider their motion for qualified immunity and provide a final order that can be appealed from if the motion is denied."

The attorneys for plaintiff have responded to the letter motion by their own letter docketed July 19, 1996, as follows:

"We believe summary judgment is inappropriate at this virtually pre-discovery stage. Depositions will afford the Plaintiffs an opportunity to test the credibility of the affiants whose conclusory and substantially hearsay based affidavits were submitted in support of the Defendants' motion. By reason of Defendants' grossly premature motion for dismissal, Plaintiffs cannot presently contest statements made in any of these supporting affidavits. An opportunity to question these Defendants and non-party witnesses at depositions is essential.

The manifest unfairness of Defendants' strategic maneuver is exacerbated by reason of the fact that only they had an opportunity to elicit testimony from the Plaintiffs at a New York State General Municipal Law § 50–h hearing conducted in March 1995. The hearing was conducted on Plaintiffs' state law claims pursuant to a state statutory provision which afforded Plaintiffs no reciprocal right to question defendants.

Under the circumstances it is evident that movant's real objective is not premised on a good faith intent to resolve a supposed qualified immunity claim. Rather it is to induce the Court to enter an order which will serve as the predicate for a patently frivolous, dilatory appeal—unnecessarily driving up the cost of litigation.

Therefore, Plaintiffs respectfully request the Court abide by its decision to reserve a decision on the Defendants' motion until September 27, 1996 and permit discovery to go forward."

The difficulty with this motion as presented is that the claim for the civil rights violation and the motion for summary judgment based on qualified immunity are essentially fact intensive and dependent on motive and intent.

Plaintiffs Joshua Herzog and his parents, Miriam and Jeffrey Herzog sued Mr. George Will and Mr. Ivan Katz, who were at all relevant times the Principal and Vice Principal of Monticello High School, Ms. Eileen Casey, who was Superintendent of the Monticello Central School District, Ms. Jean Rosenhech, who was Chairperson of the Board of Education of the Monticello Central School District, Mr. Jack Leshner, Mr. Richard Feller, and Ms. Vivian Liff, who were members of the Board of Education, Mr. Neil Muscatiello, who was the Assistant Superintendent for Curriculum and Instruction, Ms. Alyce Vanetten, who was a member of the Monticello Central School District, and the Monticello Central School District, as well as the Village of Monticello and certain of its police officers who have not joined in the motion. Plaintiffs allege violations of the First, Fourth and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of New York. Plaintiffs assert defendants unlawfully imprisoned, falsely arrested, and maliciously prosecuted Joshua Herzog in violation of his Fourth and Fourteenth Amendment rights under the Constitution of the United States and the New York State Constitution and unlawfully searched their home, seizing their computer disk. Violations of due process are also alleged.

The following facts are presented: In January 1995, Joshua Herzog, who was a senior at Monticello High School, edited and published a non-school sponsored newspaper entitled "The Sub Station." The newspaper, loaded with vulgarities, misspellings, grammatical errors and poor usage of English is no credit to the educational excellence of the school, and was also politically incorrect (naming Ms. Donna Lewis, a special education student at Monticello High, as the "Ass of the Week"). The clandestine paper (Exhibit 5, attached to the motion) contains the following exhortations (spelling as in original):

"Does anyone out there care anymore??? Do you care that you have been raped of your rights? Or do you like being a pris-

oner? We have to do something about it. Stop blindly following these assholes new rules and start questionong [sic] there [sic] athuority [sic]. We can turn this mother fucker inside out.

Cause some hell my brothers and sisters of Monticello High. Let's show this old crusty generation that we are not "Generation X. But Generation Fuck You!!!!" Start throwing your garbge [sic] in the courtyard. Start tagging the walls with your tag. Wear your Pot, Acid, Alcohol, and Revolution T–shirts. Piss on the floor. Cloud the bathrooms with your glourious [sic] ciggerete [sic] smoke. We can't bow down any more. We are almost 1,000 strong. Not even the police can handle a crowd of this size. This OUR school [sic]. Let us show these power hungary [sic] egotystical [sic], caring bastards something. Let's make them dread coming to this building like we do.

{Sweet Irony}

Let's show them that they can't treat generation Fuck You, like shit anymore and plan on getting away with it.

**If your [sic] not enraged than [sic] your [sic] not paying attetion [sic].**

Copies of The Sub Station were discovered at Monticello High School, and on January 13, 1996, Joshua Herzog was questioned by defendants Mr. Will and Mr. Katz, the Principal and Assistant Principal, regarding his role in the preparation of The Sub Station. He confessed and signed a purported consent to a search of the Herzog residence by the Monticello Police Department. Mr. Katz and Officers Accomando and Weiner escorted Joshua to the Herzog residence and entered Joshua's parents' bedroom, where the computer on which he prepared The Sub Station was located. Joshua then downloaded onto a disc a copy of the Sub Station data stored on the computer's hard-drive, which also contained private documents belonging to his parents.

Joshua was arrested and charged with criminal nuisance and inciting to riot and taken to the Monticello Police Station. He was released on the same day, and on February 17, 1996, the charges were dropped. On or about January 17, 1995, Joshua received a five-day suspension pursuant to New York Education Law § 3214, in which it was alleged:

"Joshua Herzog, a student of the Monticello High School located in the Village of Monticello, County of Sullivan, State of New York, is accused of conduct endangering the safety, health or welfare of others as more particularly described in Section 3214(3) of the Education Law of the State of New York in that, on or about January 13, 1995, and on the days preceding that date, the students did participate in preparation and/or distribution and/or dissemination of a newspaper type publication calling for destruction of property and insubordination."

On January 19, 1995, Joshua, together with his parents and their then attorney Mark L. Schulman, Esq., attended a hearing which was held before defendant Dr. Neil Muscatiello. Dr. Muscatiello issued his findings and recommendations that Joshua be placed on out of school suspension for a five day period. By letter dated January 20, 1995, Ms. Casey notified plaintiffs that she accepted the findings and recommendations of Dr. Muscatiello, and plaintiffs appealed Ms. Casey's decision to the Board of Education. On February 21, 1995, the Board of Education affirmed Ms. Casey's decision, and the Herzogs appealed the suspension to the New York State Commissioner of Education, which overturned the Board of Education's affirmance of Ms. Casey's decision.

From the foregoing recital of facts it may be perceived that the issues concerning qualified immunity vary for each individual defendant and depend entirely on facts not yet established as true by the litigation process. It is unclear whether Joshua actually did anything on school grounds in connection with the distribution of the paper, and also unclear whether any defendant had reasonable grounds to believe he had done so. The status of Mr. Katz in the defendant's home along with the arresting officers is highly ambiguous. Was he participating in an illegal search and a false arrest? Or, was he simply present as a bystander pursuant to some school policy (apparently unwritten) which requires a teacher or staff member to

be present to protect the interest of a student who has been arrested in the absence of his parents? Is any other defendant involved with the decision on the part of Mr. Katz to participate in the search, if indeed he did so? Did defendant George Will, who signed the misdemeanor information, have reasonable cause to believe that the arrest was lawful?

In addition to these disputed issues of fact, which could be resolved, hopefully, by deposition testimony, there are issues arising out of the subsequent disciplinary proceedings. Based on all the surrounding facts would a reasonable school official foresee substantial disruption or material interference with school activities as a result of the clandestine newspaper? Or, was the speech merely critical of school administrators, a topic with which the school officials were uncomfortable and which they wanted to eliminate from discussion among the students? Did any of the defendants violate plaintiff's due process rights because he was found guilty of an act of which he was not charged, by the decision of Dr. Muscatiello, adopted by Ms. Casey and affirmed by the Board of Education? While the New York State Commissioner of Education agreed that Joshua was not afforded due process and that the hearing officer's determination of guilt was unsupported by the record, it remains unclear on the papers presently before the Court whether the participants in the hearing acted in objective good faith so as to be entitled to qualified immunity for their participation in the hearings, and indeed it also remains unclear which defendants participated to what extent in the commencement of the disciplinary hearings and their conduct. Plaintiffs contend that the defendant school officials acted in concert and that their conduct should not be judged individually. This, too, is unclear.

It is beyond question that without reasonable pretrial discovery, this case may not be resolved by the favorable grant of summary judgment based on qualified immunity as a matter of law.

We have been reminded again and again by our Court of Appeals that qualified immunity is an affirmative defense which defendants have the burden of establishing by competent evidence at trial or on a motion for summary judgment. See *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir.1996).

Before summary judgment may be granted in circumstances such as are found in this case:

"The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." *Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 [106 S.Ct. 2505, 2511 n. 5, 91 L.Ed.2d 202] (1986)). While "the trial court may properly deny further discovery if the non-moving party has had a fully adequate opportunity for discovery," *id.*, the district court made no such finding here. On the contrary, the district court's order granted the parties' request to stay all discovery "until there is a final determination on [Berger's] motion for partial summary judgment," and there has been no discovery as yet in this action. Thus, we cannot conclude that the parties had already had "a fully adequate opportunity for discovery" when the district court granted summary judgment. *Id.* "In short, the grant of summary judgment here was premature." *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995); see also *Sutera v. Schering Corp.*, 73 F.3d 13, 18 (2d Cir.1995) (reversing summary judgment entered before any discovery had taken place)."

*Berger v. United States*, 87 F.3d 60, 65 (2d Cir.1996).

Although movants apparently regard themselves as entitled to an immediate decision without discovery and an immediate appeal if their motion is denied, our Court of Appeals has made clear that the rules for summary judgment are no different where a qualified immunity defense is at issue. On this issue, our Court of Appeals has held:

"Summary judgment dismissing a claim on the basis of the defendants' qualified-immunity defense may thus be granted if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the

light most favorable to the plaintiffs and with all permissible inferences drawn in their favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right. See, e.g., *Robison v. Via*, 821 F.2d [913] at 921 [ (2nd Cir.);] *Halperin v. Kissinger*, 807 F.2d 180, 189 (D.C.Cir.1986) (Scalia J., sitting by designation).

Because the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as of the threat of damages, summary judgment is encouraged as a device for disposing of claims barred by such immunity. See, e.g., *Harlow v. Fitzgerald*, 457 U.S. at 818 [102 S.Ct. at 2738;] *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993); *Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir.1992); *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991); see also *Behrens v. Pelletier*, — U.S. —, —, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996). For much the same reason, although the denial of summary judgment is ordinarily not an appealable "final decision" within the meaning of 28 U.S.C. § 1291 (1994), see e.g., *Johnson v. Jones*, — U.S. —, —, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995) (the question of whether the evidence adduced by the plaintiff is sufficient to show a genuine triable issue of material fact on the merits of his claim, for example, is not reviewable by appeal from the order denying summary judgment), a limited exception has been carved out for certain summary rejections of the qualified immunity defense. In *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) ("Mitchell"), the Supreme Court ruled that where a summary judgment motion is based on a substantial claim of qualified immunity, the district court's denial of the motion is immediately appealable under the Cohen doctrine (see *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)), if the denial turned on an issue of law. See, e.g., *Mitchell*, 472 U.S. at 530 [105 S.Ct. at 2817;] *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir.1990);

see also *Johnson v. Jones*, — U.S. at —, 115 S.Ct. at 2156. To be appealable under the Cohen doctrine,

the order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454 [2457] 57 L.Ed.2d 351 (1978). Applying Cohen's criteria, the Mitchell Court reasoned that the rejection of a qualified immunity defense as a matter of law should be immediately appealable because the qualified immunity doctrine

recognize[s] an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity it is effectively lost if a case is erroneously permitted to go to trial.

\*    \*    \*    \*    \*    \*

The Mitchell Court took pains to make clear that the denial of a claim of qualified immunity may appropriately be appealed immediately only

"to the extent that it turns on an issue of law." ... It "emphasize[d] ... that the appealable issue is a purely legal one: whether the facts alleged ... support a claim of violation of clearly established law." ... It distinguished precedent not permitting interlocutory appeals on the ground that "a qualified immunity ruling ... is ... a legal issue that can be decided with reference only to undisputed facts and in isolation from the remaining issues of the case." ... And, it explained its separability holding by saying that "[a]n appellate court reviewing the denial of the defendant's claim of immunity need not consider the correctness of the plaintiff's version of the facts."

*Johnson v. Jones,* —— U.S. at ——, 115 S.Ct. at 2156 (quoting *Mitchell,* 472 U.S. at 528 n. 9, 530 [105 S.Ct. at 2816 n. 9, 2817] (emphasis in Johnson)). *Thus, where the district court has ruled that adjudication of the immunity defense requires the resolution of genuinely disputed questions of fact, the denial of summary judgment is not immediately appealable.* See, e.g., *Cook v. Sheldon,* 41 F.3d 73, 78–79 (2d Cir.1994); *Kaminsky v. Rosenblum,* 929 F.2d at 926–27; *Hurlman v. Rice,* 927 F.2d 74, 79 (2d Cir.1991); *Langley v. Coughlin,* 888 F.2d 252, 254 (2d Cir.1989); *Mahoney v. Hankin,* 844 F.2d 64, 68–69 (2d Cir.1988). To be appealable immediately, the qualified-immunity denial must present " 'a legal issue that can be decided with reference only to undisputed facts and in isolation from the remaining issues of the case.' " *Johnson v. Jones,* —— U.S. at ——, 115 S.Ct. at 2156 (quoting *Mitchell,* 472 U.S. at 530 n. 10 [105 S.Ct. at 2817 n. 10].) (Emphasis added)

\*   \*   \*   \*   \*   \*

In light of these factual issues, the policy considerations underlying the immediate appealability of a denial of summary judgment based on a determination of legal issues, set out in Mitchell and adumbrated in Johnson v. Jones, are not served by an immediate appeal."

*In re: State Police Litigation, Connecticut Criminal Defense Lawyers Association, et al.,* 88 F.3d 111 (2d Cir.1996).

For the foregoing reasons, believing that this pending motion may not be decided absent reasonable pretrial discovery, this Court adheres to its prior disposition and directs that the discovery proceed as ordered, and that the pending motion be heard on September 27, 1996, on the existing papers and any additional papers which counsel for either party may wish to submit. Reargument having been granted, the prior disposition is adhered to.

SO ORDERED.