BREATHE LLC, et al., Plaintiffs,

v.

WHITE FOX VENTURES, INC., et al., Defendants.

17–CV–367 (VM)

United States District Court, S.D. New York.

Signed 06/28/2017

Christopher Lloyd Brown, Brown & Rosen LLC, Boston, MA, for Plaintiffs.

Ira George Greenberg, Locke Lorde LLP, New York, NY, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge:

Plaintiffs Breathe LLC ("Breathe") and Tyler Glover ("Glover," together with Breathe, "Plaintiffs") brought this action against White Fox Ventures, Inc. ("White Fox") and Seth Shaw ("Shaw," together with White Fox, "Defendants"). Plaintiffs moved for Summary Judgment. ("Motion," Dkt. No. 24.) For the reasons discussed below, Plaintiffs' Motion is denied.

## I. BACKGROUND

In August 2015, Plaintiffs sued ECigs Corporation ("ECigs") in a separate action that was resolved by a settlement agreement reached in March 2016. (The "Settlement Agreement," see Dkt. No. 8, Ex. 2.) The Settlement Agreement provided that (1) ECigs would immediately assign its domain name and fifty million shares of its vested Class A stock ("Stock") to Plaintiffs; (2) ECigs would have a twelve-month period to sell off its existing inventory and split the proceeds equally with Plaintiffs; (3) during the sell-off period, ECigs would provide an accounting of the remaining inventory to Plaintiff every two weeks; and (4) at the end of the sell-off period, ECigs would destroy any remaining product. (See Settlement Agreement ¶¶ 2, 3, 6, 7.) The Settlement Agreement also provided that the remaining inventory would be

sold jointly, and specifically states in relevant part:

> [ECigs] agree [sic] to jointly sell [ECigs]'s remaining inventory held at Ritway over the next 12 months as stipulated in the settlement agreement. At the end of the 12 months, also known at [sic] "the joint inventory sales effort," ... [ECigs] acknowledges that it will be completely removed from the ECIG marketplace. But for the next 12 months [ECigs] will maintain an operating business in the space through its above mentioned [sic] joint effort. (Id. ¶ 4.)

The Settlement Agreement further stipulated that, if either ECigs or Shaw breached the Settlement Agreement, they would pay $150,000 to cover legal fees.

Around April 2016, ECigs changed its name to White Fox and was acquired by investors who believed that White Fox was a shell corporation they could use to conduct business in Japan. ("Shaw Affidavit," see Dkt. No. 27, ¶ 9; Form 10–Q, see also Dkt. No. 34, Ex. 2, at 2.) Following Shaw's departure from White Fox on August 22, 2016, Plaintiffs notified Shaw that he and White Fox were in violation of the Settlement Agreement (Shaw Affidavit ¶¶ 1, 9, 11.)

Plaintiffs commenced this action on January 18, 2017, alleging that Defendants breached the Settlement Agreement by (1) failing to assign the domain name; (2) failing to provide the required bi-weekly accounting to Plaintiffs; and (3) belatedly assigning fifty million shares of Stock to Plaintiffs. ("Complaint," see Dkt. No. 8 at 2.) Plaintiffs demanded damages in the amount of $150,000 in attorneys' fees and equitable relief. (Id. at 3.)

Plaintiffs filed this Motion on May 10, 2017, reasserting their argument that White Fox breached the Settlement Agreement. Plaintiffs further argue that because there are no open questions of material fact, they are accordingly entitled to summary judgment. ("Memorandum in Support," see Dkt. No. 25 ¶¶ 4–6.)

White Fox argues in its opposition to Plaintiffs' Motion that (1) there are genuine issues of material fact with respect to the alleged breach of the Settlement Agreement; (2) Glover does not state a claim upon which relief can be granted because the only benefit he obtained from the Settlement Agreement is a release from ECigs of all future claims; (3) the "liquidated damages" provision of the Settlement Agreement is invalid because it is an unenforceable penalty; (4) White Fox is entitled to take discovery; and (5) waiver and other similar doctrines preclude this action. ("Opposition," see Dkt. No. 35.)

Replying to White Fox's Opposition, Plaintiffs argue that (1) the liquidated damages provision is enforceable; (2) no issue of material fact exists relating to Breathe's performance of the contract; (3) White Fox was given proper notice regarding its breach of the Settlement Agreement; and (4) there is no need for discovery because White Fox admits that it did not provide accounting or transfer the website domain. ("Reply," Dkt. No. 36.)

## II. DISCUSSION

Under Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), a party is entitled to summary judgment if the evidence shows there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The burden is on the moving party to show that there are no open questions of material fact. See Celotex, 477 U.S. at 323, 106 S.Ct. 2548. The nonmoving party must then offer evidence of open questions of material fact and may "not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence ...." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998). All "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ A court will grant summary judgment on a breach of contract claim "in instances in which the contract's words, in and of themselves, convey a definite and precise meaning absent any ambiguity." Maxim Group LLC v. Life Partners Holdings, Inc., 690 F.Supp.2d 293, 303 (S.D.N.Y. 2010) (internal quotation marks omitted). Ambiguity exists when a "reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." Topps Co. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008). If a contract is ambiguous, "summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case." Id.

■ "Under New York law, the elements of a breach of contract claim are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages." Swan Media Group, Inc. v. Staub, 841 F.Supp.2d 804, 807 (S.D.N.Y. 2012).

■ Here, summary judgment in favor of Plaintiffs must be denied because the parties' letter correspondence indicates that there are still several open questions of material fact regarding whether Plaintiffs have adequately performed under the Settlement Agreement and whether White Fox has breached the Settlement Agreement.

First, the Settlement Agreement is unclear with respect to Plaintiffs' obligations during the "joint inventory sales effort" period in which ECigs agreed to sell its remaining inventory "jointly." (Settlement Agreement ¶ 4.) Plaintiffs argue that they had "no duties to promote, sell, market or distribute the inventory" and, further, that they had "no obligation to jointly share in the selling of ECigs/White Fox's inventory or take any affirmative action." ("Glover Affidavit," Dkt. No. 26, ¶ 10; Shaw Affidavit ¶ 12.) White Fox argues, however, that a plain reading of the Settlement Agreement indicates that Plaintiffs should have assisted in the effort and that Plaintiffs' failure to do so constitutes a failure to perform under the Settlement Agreement. (Opposition at 4–5.) Further discovery is needed to resolve this ambiguity in the Settlement Agreement to determine whether the Plaintiffs have adequately performed.

■ Second, there is an open question as to whether the provision regarding the transfer of the domain name has been modified. While the Settlement Agreement requires that the domain name be transferred immediately to Plaintiffs, White Fox argues that it was unable to do so because of disputes with a former chief executive officer, Joshua Kimmel, and that

the parties subsequently modified the Settlement Agreement due to those disputes. (Shaw Affidavit ¶ 13.) However, "fundamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms." Dallas Aero., Inc. v. CIS Air Corp., 352 F.3d 775, 783 (2d Cir. 2003) (internal quotation marks omitted). The record is currently ambiguous as to whether this provision of the Settlement Agreement was modified and, thus, whether White Fox has breached the provision.

Third, the applicability of the Settlement Agreement's requirement that ECigs account for the remaining product to Plaintiffs during the sell-off period, when White Fox never sold any product, is unclear. The Settlement Agreement is silent with respect to whether accounting is needed when no sales of the remaining product have taken place. White Fox did, in accordance with this provision of the Settlement Agreement, destroy the remaining product. ("Certificate of Destruction," see Dkt. No. 34, Ex. 3.) Further development of the record is necessary to determine whether White Fox nevertheless had a duty to account for the remaining product.

■ Fourth, another open question exists regarding whether White Fox's late delivery of the Stock constitutes a material breach. The Settlement Agreement provided that the shares of Stock should be delivered "by April 6, 2016." (Settlement Agreement ¶¶ 6, 7.) White Fox delivered the Stock several months after this specified date. "In the absence of a time of the essence clause or special circumstances, a party can make time of the essence only by giving a distinct, clear and unequivocal notification to that effect." Berardi v. Fundamental Brokers, Inc., Nos. 89 CIV. 5143, 90 CIV. 0646, 1990 WL 129174, at *15 n. 16 (S.D.N.Y. Aug. 30, 1990) (citing Wood-

work Display Co. v. Plagakis, 137 A.D.2d 809, 525 N.Y.S.2d 273, 275 (2d Dep't 1988)). The current record is silent regarding whether Plaintiffs or White Fox made the delivery date of the Stock "of the essence" through a "distinct, clear and unequivocal notification." Id.

Given the open questions of fact with respect to Plaintiffs' adequate performance and White Fox's alleged breaches of the Settlement Agreement, the Court is persuaded that summary judgment would be inappropriate at this time.

Furthermore, White Fox is entitled to discovery in this case prior to a summary judgment motion, because "[s]ummary judgment is appropriate after sufficient time for discovery has elapsed." Pettus v. Horn, No. 04 Civ. 459, 2005 WL 2296561, at *2 (S.D.N.Y. Sept. 21, 2005) (citing Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996)). At this stage, there are numerous, significant material facts in dispute that necessitate further discovery. The Court is therefore persuaded that requiring White Fox to defend this claim without discovery would be fundamentally unfair.

Finally, White Fox raises questions regarding the sufficiency of the Complaint that makes summary judgment for Plaintiffs inappropriate.

First, White Fox argues that Glover fails to state a claim for relief because Glover obtained only a release of all future claims from the Settlement Agreement.

■ Second, White Fox argues that the Settlement Agreement's damages provision is an unenforceable penalty. The damages provision of the Settlement Agreement provides that, should ECigs or Shaw breach the contract, then ECigs or Shaw would pay the $150,000 of legal fees that were incurred as a result of this litigation. (Settlement Agreement ¶ 9.) A damages provision "that does not serve the purpose

of reasonably measuring the anticipated harm, but is instead punitive in nature, serving as a mere added spur to performance, will not be enforced." Agerbrink v. Model Service LLC, 196 F.Supp.3d 412, 417 (S.D.N.Y. 2016) (quotations omitted).

While the Court need not reach the merits of these arguments at this stage, the Court is persuaded that White Fox raises serious questions regarding the Complaint that would make summary judgment inappropriate.

## III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion of plaintiffs Breathe LLC and Tyler Glover for summary judgment (Dkt. No. 24) is **DENIED. SO ORDERED.**