**Hussein M. HAEKAL, Petitioner,**

**v.**

**REFCO, INC. and Ronald Von Neefe, Defendants–Respondents,**

**U.S. Commodity Futures Trading Commission, Respondent.**

**Docket No. 98–4372**

United States Court of Appeals, Second Circuit.

Argued: Aug. 26, 1999

Decided: Dec. 20, 1999

Hussein M. Haekal, Berlin, Germany, Petitioner pro se.

Stacie R. Hartman, Chicago, Illinois (Richard J. Hoskins, Paul E. Dengel, Schiff, Hardin & Waite, Chicago, Illinois, of counsel) for Defendant–Respondent Refco, Inc.

C. Maria D. Godel, Washington, D.C. (Daniel R. Waldman, General Counsel, J. Douglas Richards, Deputy General Counsel, Washington, D.C., on the brief), for Respondent.

Before: WINTER, Chief Judge,
KEARSE and STRAUB, Circuit Judges.

KEARSE, Circuit Judge:

Claimant *pro se* Hussein M. Haekal, a resident of the Federal Republic of Germany who filed a complaint with respondent Commodity Futures Trading Commission ("CFTC" or "Commission") against defendants Refco, Inc., and Ronald von Neefe, seeking reparations under the Commodity Exchange Act ("CEA" or "Act"), 7 U.S.C. § 1 *et seq.* (1994), petitions this Court for review of an order of the CFTC denying Haekal's motion for reconsideration of its dismissal of his complaint for failure to file a bond within the time limits imposed by the Commission. Haekal contends that the CFTC erred (1) in denying him a waiver of the bond requirement, and (2) in not finding that the bond he furnished was timely filed. Finding merit in Haekal's second contention, but not his first, we deny the petition to the extent that it challenges the Commission's refusal to waive the bond requirement, but we grant the petition to the extent that it challenges the Commission's ruling that the bond was not timely filed.

## I. BACKGROUND

The CEA prohibits fraudulent and manipulative conduct in connection with commodity futures transactions and permits an aggrieved customer of a registered commodities broker to seek redress for alleged violations of the Act by applying to the Commission for an order requiring the broker to make reparation to the complainant. *See CFTC v. Schor,* 478 U.S. 833, 836, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). Refco, Inc., is a commodities broker registered with the CFTC.

In September 1991, Haekal opened an investment account with Refco, Inc., or one of its unregistered affiliates (collectively "Refco"), making an initial deposit of approximately 66mm Yen. According to the complaint, Haekal began as early as September 16, 1991, to suspect that von Neefe, the account executive, had misrepresented to him the rate of interest to be earned on the deposit, and began as early as October 3 to suspect that von Neefe was engaging in unauthorized trading in his account. After making a series of inquiries and complaints, Haekal demanded that Refco return his 66mm Yen. In December 1991, Refco wired Haekal approximately 58mm Yen. Haekal promptly complained to Refco that the amount that should have been returned to him was 66mm Yen. By telex dated January 15, 1992, Refco informed Haekal that the difference between the 66mm Yen he had invested and the 58mm Yen Refco returned to him was "the amount needed to cover losses which occurred in [Haekal's] foreign exchange trad[ ]ing account." On April 12, 1993, Haekal lodged a complaint with the CFTC against Refco and von Neefe under the CEA's reparations program, 7 U.S.C. § 18, seeking recovery of the unreturned 8,112,-153 Yen, which was then equivalent to approximately $62,000.

The CEA provides that if a reparations complainant is not a resident of the United States, no formal action may be taken on his complaint unless he furnishes a bond in double the amount of his claim, to secure the payment of reasonable attorney's fees or an award on a counterclaim against him if the defendant prevails. 7 U.S.C. § 18(c). The Act also provides, however, that

> the Commission shall have authority to waive the furnishing of a bond by a complainant who is a resident of a country which permits the filing of a complaint by a resident of the United States without the furnishing of a bond.

*Id.* The CFTC regulation promulgated to implement these provisions states that, in lieu of a bond, a claimant may make a

> written request that the bond requirement be waived ... accompanied by sufficient proof that the country of which the complainant is a resident permits the filing of a complaint by a resident of the United States against a citizen of that country without the furnishing of a bond.

17 C.F.R. § 12.13(b)(4)(i)(B) (1999) ("reciprocity regulation"). The regulation further provides that unless the complaint is accompanied by either a bond or such proof, "the complaint shall not be considered duly filed." *Id.* § 12.13(b)(4)(i).

Prior to submitting his complaint, Haekal inquired of the CFTC as to the applicability of the bond requirement to him. By letter dated February 10, 1993, the CFTC Director of Proceedings R. Britt Lenz ("CFTC Proceedings Director" or "Director") advised him that the bond requirement was waived for residents of Germany on account of reciprocity. Lenz furnished Haekal with a copy of an August 31, 1992 expert opinion Lenz had received from the German law firm of Thümmel, Schütze & Partner ("Thümmel Opinion"), concluding that residents of Germany are entitled to a waiver of the bond requirement. The Thümmel Opinion stated, *inter alia,* that the German Code of Civil Procedure ("German Code" or "GCCP") requires a bond only "to secure [a] respondent's claim for reimbursement of costs and expenses, but not any possible damage claims," and that "plaintiffs having their habitual abode in the U.S.A. need not furnish any security for the respondent's damage claim." (Thümmel Opinion at 7, 11.) It also opined that while the German Code generally requires nonresidents to post security for costs (*id.* at 7), a "foreign plaintiff will not be obligated to provide security for the costs and expenses of [an] action if reciprocity is guaranteed" (*id.* at 8).

In light of this advice, when Haekal filed his complaint on April 12, 1993, he did not

file a bond. He instead cited the letter he had received from the CFTC Proceedings Director assuring him, on the basis of the Thümmel Opinion, that no bond was required. The CFTC accepted Haekal's complaint for filing and commenced formal proceedings on it, assigning the case to an Administrative Law Judge ("ALJ").

Following several months of discovery and motion practice, the ALJ, by order dated October 8, 1993, *see Haekal v. Refco, Inc.*, 1993 WL 403293 (CFTC Oct. 8, 1993), granted summary judgment dismissing Haekal's claim for lack of subject matter jurisdiction. The ALJ found that Haekal's account was not with Refco, Inc., but with one of its affiliates that was not registered with the CFTC. And although von Neefe himself was registered, the ALJ found that there was insufficient evidence that Haekal's account was, or was intended to be, one for the trading of futures contracts or commodity options. Accordingly, the ALJ concluded that the CFTC lacked jurisdiction to entertain Haekal's claim.

Haekal promptly appealed to the Commission, and briefing of the appeal was apparently complete by mid-January 1994. The appeal remained pending for several years, and its merits were never decided. Instead, by opinion and order dated September 26, 1997, *see Haekal v. Refco, Inc.*, 1997 WL 592387 (CFTC Sept. 26, 1997) ("September 1997 Order"), the Commission stated that the complaint had not been properly filed because Haekal had not posted a bond. First, the Commission noted that the Thümmel Opinion's assertion that no bond would be required under the German Code to cover a counterclaim for damages did not negate the possibility that a bond might be required to cover costs. Second, although noting that GCCP § 110 itself provides that a bond obligation " 'does not arise ... if, under the laws of the state of which the plaintiff is a national, a German would not be required to give security in an identical case,' " September 1997 Order, 1997 WL 592387, at *5 (quoting *Code of Civil Procedure Rules of the*

*Federal Republic of Germany of January 30, 1877* § 110(2) (Simon L. Goren trans. 1990)), the Commission pointed out that that section must be read in conjunction with the pertinent provisions of the 1954 Treaty of Friendship, Commerce and Navigation Between the United States of America and the Federal Republic of Germany, Oct. 29, 1954, 7 U.S.T. 1839 ("Treaty"), art. VI, para. 1, and the Protocol to the Treaty, 7 U.S.T. 1904 ("Protocol"), para. 6, and it concluded that the Treaty and the Protocol limit the exemption available under GCCP § 110 to those United States citizens who reside in Germany or have real property in Germany sufficient to cover costs. Under the misapprehension that the Thümmel Opinion had first been proffered by Haekal, rather than by the CFTC Proceedings Director, the Commission concluded that although Haekal had "evidently satisfied the Director of the Office of Proceedings on the point," *id.* at *4, "[t]he determination below that Haekal is exempt from the bond [requirement] is not supported by the record," *id.* at *1. Accordingly, the Commission ordered Haekal "to show cause why his complaint should not be dismissed for lack of jurisdiction" on the ground that "Haekal neither posted the bond required of nonresident complainants ... nor adequately demonstrated that the bond requirement did not apply to him." *Id.*

Haekal responded by pointing out that the Thümmel Opinion had been obtained not by him but by the CFTC Proceedings Director. He stated that he had relied on the Director's advice that he need not post a bond, and he reiterated the views advanced by the Thümmel Opinion. Haekal also argued that he had sufficient assets in the United States to cover costs and therefore should not be required to post a bond. By Order dated February 23, 1998, *Haekal v. Refco, Inc.*, 1998 WL 75205 (CFTC Feb. 23, 1998) ("February 23, 1998 Order"), the Commission found Haekal's responses to be inadequate. It stated that "[t]hough Haekal may initially have been justified in

relying on information provided to him by Commission staff, once we spoke in our September 26, 1997 order, Haekal no longer could rely on a discredited determination that he need not pay the bond." February 23, 1998 Order, 1998 WL 75205, at *1. The Commission also rejected Haekal's contention that his ownership of property in the United States sufficed to warrant a waiver of the bond requirement, noting that the assets to which Haekal referred were cash assets, not real estate. Accordingly, the Commission concluded that Haekal was required to furnish a bond.

The February 23, 1998 Order granted Haekal 45 days in which to file a bond. The Commission subsequently granted his request for an extension to April 21, 1998, and it apparently granted a further extension to May 21, 1998.

Haekal did not file a bond by May 21. On April 24, Haekal's surety submitted a letter to the Commission expressing its readiness to issue the required bond, but submitted nothing further. On June 10 or 11, Haekal sent a fax to the Commission expressing his intention to post a bond, but requesting that the required amount be lowered to reflect a change in the Yen–Dollar exchange rate. When he had received no response from the Commission by July 7, he telephoned the CFTC office; he asserts that the CFTC representative with whom he spoke advised him that his request that the amount be lowered would be rejected but that it was not too late for him to file.

Haekal finally submitted a bond to the CFTC on July 24. In the meantime, however, the Commission had issued an order dated July 13, 1998, *see Haekal v. Refco, Inc.*, 1998 WL 390811 (CFTC July 13, 1998) ("July 1998 Order"), ruling that Haekal "has had sufficient time to file a bond" and dismissing his complaint. When Haekal's bond arrived at the CFTC, it was rejected and returned to Haekal's surety.

Haekal moved for reconsideration in light of his attempts to comply with the bond requirement. The motion was de-

nied in an order dated November 18, 1998, *see Haekal v. Refco, Inc.*, 1998 WL 802100 (CFTC Nov. 18, 1998), with one Commissioner dissenting. The majority denied reconsideration on the ground that Haekal's June 11 request for a lowering of the bond amount was made "well after his second extension of time to file the bond had expired on May 21, 1998." The majority stated that it was not persuaded by Haekal's "vague assertion" that he had been assured by a CFTC staff member that it was not too late to file a bond in July, and that in any event no staff member had authority to give him such an assurance.

This petition for review followed.

## II. DISCUSSION

Haekal contends (1) that the Commission erred in ruling that he was not entitled to a waiver of the bond requirement, and (2) that if that decision was not error, the CFTC should have accepted the bond submitted by Haekal's surety on July 24, 1998. We find merit only in the latter contention.

### A. *The Bond Requirement*

■ Haekal's challenge to the Commission's ruling that he was not entitled to a waiver of the bond requirement need not detain us long. The interpretation of a statute by a regulatory agency charged with its administration is entitled to deference if it is a permissible construction of the statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Regulations promulgated by the agency to elucidate specific provisions of the statute are entitled to "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. 2778; *see also Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994); *New York Cur-*

*rency Research Corp. v. CFTC,* 180 F.3d 83, 88 (2d Cir.1999).

 We see no basis for overturning the Commission's interpretation of the CEA and the reciprocity regulation as requiring a bond from Haekal. As set out in Part I above, the CEA makes the availability of reparations proceedings contingent on the complainant's furnishing a bond but gives the Commission authority to waive that requirement for "a complainant who is a resident of a country which permits the filing of a complaint by a resident of the United States without the furnishing of a bond." 7 U.S.C. § 18(c). The CFTC's reciprocity regulation requires that a waiver request be supported by "sufficient proof" that the foreign country would not require a United States resident to post a bond. 17 C.F.R. § 12.13(b)(4)(i)(B). The Commission's interpretation of these provisions as precluding a waiver if the foreign country would require a United States resident to post any bond, even if only for costs, is not unreasonable; and its conclusion that the Thümmel Opinion, whose most concrete statement indicated only that the German Code requires no bond to cover claims for damages, was not sufficient proof that no bond of any kind would be required was not arbitrary or capricious.

Nor do we see any error in the Commission's reading of the Treaty and the Protocol as providing that a United States resident in circumstances analogous to those of Haekal would be required to post a bond for costs in order to bring suit in Germany. The Treaty states that

> [n]ationals and companies of either Party shall be accorded national treatment with respect to access to the courts of justice and to administrative tribunals and agencies within the territories of the other Party, in all degrees of jurisdiction, both in pursuit and in defense of their rights.

Treaty, 7 U.S.T. at 1845, art. VI, para. 1. The Protocol explains that

> [w]ith reference to Article VI, paragraph 1, nationals and companies of either Party appearing as plaintiff or intervening party before the courts of the other Party shall be exempt from obligation to post security for costs in such instances as nationals or companies of the other Party would be exempt; *exemption, however, is only granted if:*
>
> > (a) *the nationals have their permanent residence* or the companies their establishment (main or branch), *or*
> >
> > (b) *the nationals* or the companies *have sufficient real property to cover costs,*
>
> *in the territory . . . before the courts of which the suit is pending.*

Protocol, 7 U.S.T. at 1905, para. 6 (emphases added). Haekal made no showing that his permanent residence is in the United States or that he owns real estate in the United States. The Commission not unreasonably concluded that Haekal's ownership of an investment account in the United States does not suffice.

Accordingly, we deny the petition for review insofar as it seeks reversal of the CFTC's ruling that Haekal may not pursue his reparations claim without furnishing a bond.

**B.** *The Timeliness of the Bond Furnished*

We have far greater difficulty with the Commission's rejection of the bond submitted by Haekal on July 24, 1998, as untimely. Given (a) the CFTC's original acceptance of Haekal's complaint as properly filed, (b) the amount of time then remaining before the running of the statute of limitations on Haekal's claim, and (c) the lengthy delay preceding the Commission's eventual ruling that Haekal's complaint was not properly filed and that a bond would be required, we conclude that principles of equitable tolling required the Commission to consider Haekal's bond as timely when submitted in July 1998.

■ "Time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling'" where necessary to prevent unfairness to a diligent plaintiff. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *see, e.g., Hallstrom v. Tillamook County,* 493 U.S. 20, 27, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989).

> Federal courts have typically extended [such] equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.

*Irwin v. Department of Veterans Affairs,* 498 U.S. at 96, 111 S.Ct. 453 (footnote omitted). Equitable tolling has also been allowed in a suit against a government agency where the agency's undisclosed internal policies prevented claimants from timely filing their claims. *See Bowen v. City of New York,* 476 U.S. 467, 479–82, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). And such tolling has been allowed even where the unfairness that would otherwise result was not the fault of the defendant. *See, e.g., Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (equitable tolling applied where plaintiff timely filed complaint in wrong court); *Browning v. AT & T Paradyne,* 120 F.3d 222 (11th Cir.1997) (same where age-discrimination plaintiff had been materially misinformed by the Equal Employment Opportunity Commission as to the length of the statute of limitations under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*). When equitable tolling is applied, the limitations period is deemed interrupted; when the tolling condition or event has ended, the claimant is allowed the remainder of the limitations period in which to file his action. *See, e.g., Tristar Corp. v. Freitas,* 84 F.3d 550, 553 (2d Cir.1996),

*cert. denied,* 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997).

The CEA provides that a person may "apply to the Commission for" reparations under the Act "within two years after the cause of action accrues." 7 U.S.C. § 18(a)(1). As discussed in Part II.A. above, the statute and the regulations provide that a reparations complaint is not deemed properly filed, and formal proceedings may not commence, unless the complaint of a nonresident complainant is accompanied by a bond or a waiver request accompanied by proof of reciprocity. Consistent with the statute of limitations set by the CEA, CFTC regulations provide that the bond or request-for-waiver requirements "must be satisfied within two years after the complainant's cause of action accrues." 17 C.F.R. § 12.13(b)(4)(ii).

■ In the present case, Haekal submitted his complaint on April 12, 1993, along with his proof of reciprocity, to wit, reference to the February 10, 1993 letter he had received from the CFTC Proceedings Director assuring him that he satisfied the reciprocity regulation and that the bond requirement was waived. The CFTC accepted Haekal's complaint as properly filed; formal proceedings were commenced; vigorous litigation ensued; and the matter was adjudicated before the ALJ, who rendered a final decision. In light of the CFTC Proceedings Director's advice to Haekal, which the Commission did not rule was incorrect until nearly five years later, principles of fairness require that the statute of limitations be deemed to have been tolled on April 12, 1993, when Haekal's complaint was accepted for filing by the CFTC.

It is not entirely clear when Haekal's cause of action against Refco and von Neefe for the unreturned 8mm Yen accrued. It seems most likely to have accrued in December 1991, when Refco returned to Haekal 8mm Yen less than the amount he demanded. It appears that the earliest date on which any claim by Haekal could have accrued was September 16,

1991, *i.e.*, 1–2 weeks after his initial investment, when he first suspected that von Neefe had made misrepresentations to him as to interest rates. Even assuming that the claim asserted by Haekal before the CFTC for the unreturned principal arose as early as September 16, 1991, we conclude, for the reasons that follow, that the deadlines imposed by the Commission in 1998 improperly truncated the period during which Haekal was entitled to satisfy the bond requirement.

■ If the claim accrued on September 16, 1991, the CEA permitted Haekal to file the claim with the CFTC on or before September 16, 1993; his April 12, 1993 complaint was filed 157 days before that deadline. Since the running of the statute of limitations was tolled on April 12, 1993, by the CFTC's acceptance of the complaint as properly filed, Haekal was entitled to satisfy the bond requirement within 157 days after the tolling condition ended.

The tolling condition ended on February 23, 1998, when the Commission first ordered Haekal to file a bond. Although the Commission first repudiated the agency's 1993 bond-waiver ruling on September 26, 1997, it did not at that point unconditionally rule that Haekal must furnish a bond; rather, it ordered him "to show cause" why his complaint should not be dismissed for failure to satisfy the reciprocity regulation, and it offered him an opportunity to provide better proof than the Thümmel Opinion. September 1997 Order, 1997 WL 592387 at *1, 6. Not until Haekal had responded to that order to show cause did the Commission definitively rule, in its February 23, 1998 Order, that Haekal did not satisfy the reciprocity regulation and was required to furnish a bond. At that point, the tolling ended.

Accordingly, the two-year limitations period for Haekal's claim ended 157 days after February 23, 1998, *i.e.*, on July 30, 1998. The Commission, however, granted Haekal only until May 21; it dismissed his complaint on July 13, *i.e.*, 134 days after February 23; and it refused to accept the bond he submitted on July 24, *i.e.*, 151 days after February 23. The Commission's refusal to allow Haekal the full 157 days to which he was entitled following its ruling that he was required to file a bond failed to conform to the CFTC's own regulation that the bond requirement "be satisfied within two years after the complainant's cause of action accrues," 17 C.F.R. § 12.13(b)(4)(ii), and cut short the two-year limitations period to which Haekal was entitled under the CEA. In sum, even on the assumption least favorable to Haekal as to when his claim accrued, the bond presented to the CFTC on July 24, 1998, was submitted six days before the end of the two-year period allowed by the CEA and should not have been rejected as untimely.

We do not suggest that the Commission cannot, in an appropriate case, clear its docket of complaints that do not comply with the reciprocity regulation. It plainly may dismiss such a complaint without prejudice to refiling with the proper bond within the statute-of-limitations period. But we see no authority for the Commission to foreclose satisfaction of the bond requirement at any time before expiration of the limitations period.

## CONCLUSION

We have considered all of the parties' contentions in support of their respective positions and have found them to be without merit except insofar as indicated above. The petition for review is denied to the extent that the Commission refused to waive the bond requirement, and is granted to the extent that the Commission ruled that petitioner's bond was not timely filed.