ANTONIOS A. ALEVIZOPOULOS AND ASSOCIATES, INC. and Peter Amoruso and Associates, Inc., Plaintiffs,

v.

COMCAST INTERNATIONAL HOLD-INGS, INC., Comcast Corporation, Guilherme Desouza Villares and Elaine Marie Cortez Gonin, Defendants.

No. 99 Civ. 9311(SAS).

United States District Court,
S.D. New York.

March 13, 2000.

Allan A. Joseph, Hall, David and Joseph, P.A., Miami, Florida, for Plaintiffs.

James L. Kerr, Davis Polk & Wardwell, New York, New York, for Defendant Comcast.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs are suing Comcast International Holdings, Inc. and Comcast Corporation (collectively "Comcast") alleging tortious interference with contract, tortious interference with business relations, and conspiracy to breach fiduciary duty. Comcast now moves pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on the ground that plaintiffs' tort claims against Comcast are time-barred by the applicable three-year statute of limitations. Alternatively, Comcast

moves under Rule 12(b)(6) for dismissal of plaintiffs' tort claims for failure to state a claim. For the following reasons, Comcast's motions are denied except for its motion to dismiss plaintiffs' tortious interference with business relations claim which is granted.

## I. Facts

With the exception of the discussion relating to public disclosures and corporate reorganizations, the following facts are taken from plaintiffs' Amended Complaint ("Cmplt") and are deemed true for purposes of these motions.

In 1991, plaintiffs met Guilherme De-Souza Villares ("Villares") and Elaine Marie Cortez Gonin ("Gonin") for the purpose of obtaining United States corporate funding for the creation of a paging and cellular telephone operation in Brazil. Cmplt ¶ 7. In early 1993, Villares and Gonin obtained paging licenses which covered approximately sixty percent of the Brazilian population.[1] Id. ¶ 8. In the Spring of 1993, plaintiffs, Villares and Gonin met with Albert Grimes, the president of Schelle Cellular Group ("Schelle"), a Maryland-based corporation, to promote a joint venture to bring paging and cellular services to Brazil. Id. ¶ 9. Grimes set up a meeting with Comcast in which plaintiffs, Villares and Gonin made a presentation to Comcast to induce it to become a member of the joint venture. Id. ¶ 10. After that meeting, the parties agreed to further investigate the joint venture by traveling to Brazil to meet the people with whom Villares and Gonin worked. Id. ¶ 11. As a result, a meeting was held in Brazil in April of 1993, at which the parties affirmed their interest in pursuing a joint venture. Id. ¶ 12.

At all times, plaintiffs, Villares and Gonin had the understanding that they would be partners in any resulting joint venture to bring paging and cellular services to Brazil. Id. ¶ 13. Plaintiffs and Villares

---

1. It should be noted that only residents of Brazil can obtain paging licenses in that country. Affidavit of Robert S. Pick, Vice President of Comcast Corporation, sworn to November 17, 1999 ("Pick Aff."), ¶ 5.

reduced this understanding to a writing, the Consulting Equity Agreement, which stated that Villares and Gonin would receive thirty-five percent of any resulting joint venture, collectively, and plaintiffs would receive five percent each from Villares' and Gonin's share.[2] *Id.* ¶¶ 13–14. Comcast and Schelle were fully aware that plaintiffs, Villares and Gonin were to be equity participants in any resulting joint venture. *Id.* ¶ 15.

Some time following the April 1993 Brazilian meeting, Comcast indicated its desire to negotiate with only one party who would represent plaintiffs, Villares and Gonin. *Id.* ¶ 16. Plaintiffs designated Villares as this representative and everyone understood that plaintiffs had placed a special confidence and trust in Villares to negotiate on their behalf. *Id.* ¶ 17. Negotiations then ensued between Villares, Schelle and Comcast. *Id.* ¶ 18. In August of 1993, negotiations broke down and Schelle and Comcast agreed to terminate any further discussion. *Id.* ¶ 19. Villares informed plaintiffs that the negotiations with Comcast had failed but instructed them to seek out other interested U.S. corporations which they did. *Id.* ¶ 20. In late 1993, Villares told plaintiffs that he and Gonin were no longer interested in pursuing a joint venture. *Id.*

Then, in 1998, plaintiffs heard a rumor that Villares and Gonin had been working with Comcast to form a joint venture for cellular services in Brazil. *Id.* ¶ 22. To confirm this rumor, plaintiffs hired an investigator who discovered that Villares and Gonin had in fact continued negotiations with Comcast and formed a joint venture with Comcast in late 1993. *Id.* ¶¶ 23, 26. According to plaintiffs, Comcast, Villares and Gonin intentionally concealed their negotiations from them and intentionally misled plaintiffs into believing that there was no further interest in pursuing a joint venture when, in fact, the

parties continued working toward that goal. *Id.* ¶¶ 24–25.

On September 21, 1993, Comcast, Villares, and TGW Telecomunicacoes S/C Ltda. ("TGW"), a Brazilian company in which Villares held a majority interest, executed a memorandum of understanding setting forth their intention to form a joint venture in order to obtain and develop specialized mobile radio ("SMR" or cellular) licenses in Brazil. Pick Aff. ¶¶ 9–10. The arrangement was that TGW would procure SMR licenses and Comcast would construct and operate the SMR networks. *Id.* ¶ 10.

On March 22, 1994, Comcast first obtained an equity interest in a Brazilian SMR business when Comcast Brazil, Inc. and Mobile Enterprises, Inc. ("Mobile"), two wholly-owned subsidiaries of Comcast International Holding, Inc., acquired a forty-nine percent share in TGW and Tele–Link Telecomunicacoes S/C Ltda. ("Tele–Link"), another Brazilian corporation in which Villares held a majority interest. *Id.* ¶ 10. Comcast's acquisition of the forty-nine percent interest in TGW and Tele–Link required amendments to their Articles of Incorporation. Supplemental Affidavit of George C. Fischer, attorney for Comcast, sworn to November 11, 1999 ("Fischer Supp. Aff."), Exs. 1 and 2. These amendments were filed with a public registry in Brazil. Affidavit of George C. Fischer, sworn to October 13, 1999 ("Fischer Aff."), ¶¶ 21–22. The names Villares, Gonin, Mobile and Comcast Brazil appear in both sets of documents. Fischer Supp. Aff. Exs. 1 and 2. Under Brazilian law, certain types of corporate actions require notice to be published in the Official Gazette, the Brazilian newspaper of record, and a second newspaper. Fischer Aff. ¶¶ 15, 17. Accordingly, a number of documents providing a detailed history of the Comcast/TGW/Tele–Link relationship, including the names of the individuals and the entities involved, were published in

---

**2.** Although plaintiffs are suing both Villares and Gonin for breach of contract, Villares was the only other signatory on the Consulting Equity Agreement.

various Brazilian newspapers during 1994 and 1995. *Id.,* Exs. 9, 10, 12, 13, 29, 30, 32 & 33.

On November 27, 1995, Comcast bought out Villares' and Gonin's remaining interest in the SMR joint venture through several corporate reorganizations whereby Comcast gradually increased its ownership interest in TGW and Tele–Link. Fischer Aff. ¶¶ 30–34. Comcast ended its relationship with Villares and Gonin by entering into a Joint Venture Termination Agreement and a Share Purchase and Sale Agreement which called for the payment of $2.3 million. Pick Aff. ¶ 18. These agreements were filed with the Registry of Titles and Deeds of the City of San Paulo, thus making the termination of the joint venture a matter of public record in Brazil. Fischer Aff. ¶ 32. Since this termination, Comcast has not had any dealings with Villares or Gonin or any companies owned or controlled by them. Pick. Aff. ¶ 19.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the moving party has met its burden in showing the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts evidencing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To defeat a motion for summary judgment, the non-

moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. All ambiguities and reasonable inferences, however, must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If reasonable minds could not differ as to the import of the evidence, then summary judgment is proper. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

However, summary judgment should only be granted "[i]f *after discovery,* the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Berger v. United States,* 87 F.3d 60, 65 (2d Cir.1996) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)) (alteration in original, emphasis added). "The nonmoving party must have 'had the opportunity to discover information that is essential to [its] opposition' to the motion for summary judgment." *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir.1989) (quoting *Anderson,* 477 U.S. at 250 n. 5, 106 S.Ct. 2505). Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery. *See Sutera v. Schering Corp.,* 73 F.3d 13, 18 (2d Cir.1995).

### B. Motion to Dismiss

Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." *Harris v. City of N.Y.,* 186 F.3d 243, 247 (2d Cir.1999). "The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Coo-*

*per v. Parsky,* 140 F.3d 433, 440 (2d Cir. 1998) (internal quotation marks and citation omitted). Thus, in deciding such a motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the non-movant's favor. *Harris,* 186 F.3d at 247. Nevertheless, "[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir.1996) (internal quotations omitted). In deciding a Rule 12(b)(6) motion, the district court must limit itself to facts stated in the complaint, documents attached to the complaint as exhibits or documents incorporated in the complaint by reference. *See Dangler v. New York City Off Track Betting Corp.,* 193 F.3d 130, 138 (2d Cir.1999).

## III. Discussion

### A. Statute of Limitations/Equitable Tolling

■ The statute of limitations for tortious interference with contract and business relations is three years. *See* New York Civil Practice Law and Rules ("CPLR") § 214(4) (McKinney 1999). The statute of limitations for a conspiracy claim is measured by the underlying tort. *See Schlotthauer v. Sanders,* 153 A.D.2d 731, 545 N.Y.S.2d 197, 199 (2d Dep't 1989). When a plaintiff seeks only monetary damages, breach of fiduciary duty claims and, concomitantly, conspiracy to breach fiduciary duty claims, are governed by a three-year limitations period. *See* N.Y. CPLR § 214(4). Absent equitable tolling of the statute of limitations, plaintiffs' claims would be time-barred.[3] *See Haekal v. Refco, Inc.,* 198 F.3d 37, 43 (2d Cir.1999) ("[w]hen equitable tolling is applied, the limitations period is deemed interrupted").

■ "[T]he law is clear that fraudulent concealment of the existence of a cause of action tolls the running of the statute of limitations." *Stone v. Williams,* 970 F.2d 1043, 1048 (2d Cir.1992) (citing *Barrett v. United States,* 689 F.2d 324, 327 (2d Cir. 1982)). As explained by the Second Circuit, the essence of the federal doctrine of equitable tolling by reason of fraudulent concealment

> is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action. Since the nature of a fraud or subsequent actions taken by the defendant to conceal the fraud may have made it impossible for a plaintiff to discover the facts underlying his cause of action until after the limitations period had expired, the courts fashioned the doctrine of equitable tolling to relieve the plaintiff of the rigor of the statutory bar. Under this doctrine, the statute does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice

*Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48 (2d Cir. 1985) (internal quotation marks and citations omitted).

■ To rely on the doctrine of fraudulent concealment, a plaintiff must plead the following three elements: (1) wrongful concealment by the defendant, (2) which prevented the plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim. *See In re Merrill Lynch Ltd. Partnerships Litigation,* 154 F.3d 56, 60 (2d Cir.1998) (citing *Butala v.*

---

3. The latest date plaintiffs' causes of action could have accrued is November 27, 1995, the date of dissolution of the joint venture between Comcast and Villares. Thus, plaintiffs had until November 27, 1998 to file a timely action. The Original Complaint in this action is dated April 19, 1999, well outside the three-year period applicable to plaintiffs' claims. Plaintiffs do not dispute that their action is time-barred in the absence of equitable tolling.

*Agashiwala,* 916 F.Supp. 314, 319 (S.D.N.Y.1996)). "The evidence submitted by plaintiff to support a fraudulent concealment claim must not be conclusory, and must establish a conspiracy or other fraudulent wrong that precluded plaintiff's possible discovery of the harm she suffered." *Mahoney v. Beacon City Sch. Dist.,* 988 F.Supp. 395, 400 (S.D.N.Y.1997) (citing *Pinaud v. County of Suffolk,* 52 F.3d 1139 (2d Cir.1995)).

### 1. Requirements of Fed.R.Civ.P. 9(b)

 Furthermore, in pleading fraudulent concealment, a plaintiff must generally comply with the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure for each of the three elements. *See Butala,* 916 F.Supp. at 319 (citations omitted). Rule 9(b) states in pertinent part that "[in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.]" "The particularity requirement of Rule 9(b) is designed to further three goals; (1) to provide a defendant with fair notice of the plaintiff's claim, (2) to protect a defendant from harm to his or her reputation or goodwill, and (3) to reduce the number of strike suits." *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989) (citing *Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 1003 (2d Cir.1988)).

> To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.

*Cosmas,* 886 F.2d at 11. In addition, the complaint must "allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Id.* Comcast argues that plaintiffs, having failed to satisfy the requirements of Rule 9(b), cannot possibly invoke the doctrine of equitable tolling.[4]

I am not convinced, however, that the Rule 9(b) requirements apply where the alleged fraud is the omission of certain acts rather than affirmative misrepresentations. *See Butala,* 916 F.Supp. at 319; *see also Stertz v. Gulf Oil Corp.,* 78 Civ. 1813, 1988 WL 83188, at *3 (E.D.N.Y. July 22, 1988) (statute of limitations is tolled "until the injured party discovers, or with due diligence could have discovered, the injury" where the fraud which furnishes the basis of the action is self-concealing) (quoting *Ashland Oil Co. of California v. Union Oil Co. of California,* 567 F.2d 984, 988 (Emer.App.1977)). Here, Comcast arguably need not have done anything to conceal its alleged fraud with Villares other than failing to notify plaintiffs of its actions. It thus appears that the policy underlying Rule 9(b) would not be served by requiring particularization of statements when no such statements exist.[5]

In any event, because much of the discovery in this case has yet to take place, it is premature to bar plaintiffs from asserting fraudulent concealment as a basis for equitable tolling based on the alleged failure to satisfy Rule 9(b). On a motion for summary judgment, if it appears that the party opposing the motion cannot "present by affidavit facts essential to justify the party's opposition," then the court may deny the motion. Fed.R.Civ.P. 56(f). Rule 56(f) is designed to "allow a party opposing

---

**4.** In their Amended Complaint, plaintiffs allege that "Comcast, Villares and Gonin intentionally concealed their negotiations from Plaintiffs." Cmplt ¶ 25.

**5.** Plaintiffs have sufficiently alleged fraudulent intent. The Amended Complaint alleges that Comcast was fully aware of the co-venturer agreement between plaintiffs and Villares, demanded to negotiate with only one party representative (Villares), and then, after discontinuing negotiations with plaintiffs, entered into a joint venture with Villares for precisely the same kinds of services contemplated in earlier negotiations. Plaintiffs have thus satisfied this element of Rule 9(b) without the need for further discovery.

summary judgment reasonable access to potentially favorable information." *Consolidated Rail Corp. v. Primary Coal, Inc.,* 868 F.Supp. 566, 572 (S.D.N.Y.1994) (citing *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980)).

 To prevail on a Rule 56(f) application, the opponent of a motion for summary judgment must file an affidavit explaining: (1) what information it seeks and how it will be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what efforts have been made to obtain the information; and (4) why those efforts were unsuccessful. *See Sage Realty Corp. v. Insurance Co. of North America,* 34 F.3d 124, 128 (2d Cir. 1994). Although it appears that documents have been exchanged, depositions, including the deposition of a corporate representative of Comcast, has yet be taken. *See* Plaintiffs' Response to Comcast Defendants' Motion for Summary Judgment and Motion to Dismiss ("Response") at 4. Furthermore, the voluminous documents produced by Comcast have not yet been fully reviewed. *Id.* at 5. According to plaintiffs, "the sole issue which must be explored is the concealment of the continued relationship between Villares Defendants and Comcast after both parties told Plaintiffs they were no longer interested [in a joint venture]. Moreover, the motive of the parties must be explored, and the terms of the parties' revised agreements must be understood." *Id.* This request for additional discovery is echoed in the affidavits of Antonios Alevizopoulos and Peter Amoruso. *See* Affidavit of Antonios Alevizopoulos, sworn to December 1999, ¶ 5 (request to continue the motion for summary judgment until such time as the parties have had the opportunity for complete discovery); Affidavit of Peter Amoruso, sworn to December 1999, ¶ 5 (same). Based on this record, plaintiffs have met the requirements of Rule 56(f) in seeking additional discovery regarding the alleged wrongful concealment by Comcast. As a result, Comcast's motion for summary judgment is denied. *See Willmar Poultry Co. v. Morton–Norwich Products, Inc.,* 520 F.2d 289, 293 (8th Cir.1975) (summary judgment prohibited altogether where discovery has yet to be undertaken or is incomplete).

### 2. Public Disclosure

Comcast also argues in favor of summary judgment on the ground that the public disclosures made in Brazilian registries and newspapers preclude a finding of wrongful concealment. This argument is easily rejected. Plaintiffs were told by Villares that the deal with Comcast and Schelle had fallen through. Shortly thereafter, they were instructed by Villares to stop looking for a U.S. co-venturer. Under these circumstances, it is entirely reasonable for plaintiffs to have accepted Villares at his word and assume that the project had been terminated. To expect plaintiffs to comb through Brazilian registries and newspapers in an effort to discover whether they had been swindled makes no sense.

The cases cited by Comcast for the proposition that any public disclosure vitiates wrongful concealment are distinguishable. *See, e.g., Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.,* 828 F.2d 211, 218 (4th Cir.1987) (where plaintiff inquired into defendants' monopolistic behavior but was given inadequate response and structural interrelationship between defendants was discoverable by a search of public records, court refused to apply fraudulent concealment doctrine); *Stertz,* 1988 WL 83188, at *5 n. 2 (statute of limitations began to run when information sufficient to put plaintiffs on notice of claim was published in Wall Street Journal). These cases presume that plaintiffs' residence and the forum of disclosure are the same. Here, plaintiffs are residents of the United States and the disclosures were made in Brazil. Without a triggering event to put plaintiffs on inquiry notice, it is unreasonable to hold them to a standard of worldwide knowledge. *Cf. Netzer v. Continuity*

*Graphic Assocs., Inc.,* 963 F.Supp. 1308, 1317 (S.D.N.Y.1997) (plaintiff's absence from the United States may have justified his initial ignorance of his claim but once he received the copyright-infringing document, he had a duty to use due diligence to investigate the violation). Here, after hearing a rumor alerting them to a Villares/Comcast joint venture, plaintiffs vigorously pursued their claims by hiring an investigator and bringing suit shortly thereafter. Comcast's public disclosure argument is therefore rejected.

## B. Tortious Interference with Contract/Business Relations

■■■■ As noted earlier, Comcast also moved to dismiss plaintiffs' claims for failure to state a claim under Rule 12(b)(6). I turn now to plaintiffs' claims for tortious interference with contract and tortious interference with business relations. To state a claim for tortious interference with contract under New York law, a plaintiff must allege "(1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages." *Riddell Sports Inc. v. Brooks,* 872 F.Supp. 73, 77 (S.D.N.Y.1995); *see also Jews for Jesus, Inc. v. Jewish Community Relations Council of N.Y., Inc.,* 968 F.2d 286, 292 (2d Cir.1992). In addition, the plaintiff must assert that defendant's actions were the "but for" cause of the alleged breach of contract—that is, that there would not have been a breach but for the activities of the defendant. *See Special Event Entertainment v. Rockefeller Ctr., Inc.,* 458 F.Supp. 72, 78 (S.D.N.Y. 1978). Finally, the pleadings may not be conclusory as the law requires some factual specificity in pleading tortious interference. *See DeJesus,* 87 F.3d at 70.

■■■■ Here, the allegations of tortious interference with contract satisfy those requirements. Certainly there was a valid contract (the Consulting Equity Agreement or "Agreement") between plaintiffs and Villares evidencing their agreement to split the share of any resulting joint venture. In fact, that Agreement is appended to plaintiffs' Amended Complaint as an exhibit. Second, plaintiffs have alleged that Comcast was fully informed of the Agreement between Plaintiffs and Villares and understood that they were to be equity participants of any joint venture for paging and/or cellular services. *See* Cmplt ¶ 15. The Amended Complaint further alleges that Comcast intentionally caused Villares to break his agreement with plaintiffs. *See id.* ¶ 32. Finally, the Amended Complaint alleges that plaintiffs were damaged in an amount no less than $10,000,-000. *See id.* Wherefore Clause.

Comcast takes issue with plaintiffs' allegation of "but for" causation claiming that it is too conclusory to withstand a motion to dismiss. *See* Cmplt ¶ 33 ("Upon information and belief, Villares and Gonin would not have breached their agreement with Plaintiffs but for Comcast's interference."). Comcast also argues that plaintiffs' allegations of collusion between Comcast and Villares,[6] as well as simple economic self-interest on the part of Villares, evidence a predisposition on the part of Villares to breach. According to Comcast, such predisposition vitiates any finding of "but for" causation. These arguments are unavailing for a number of reasons.

First, simple economic self-interest is arguably always present when one party

6. Comcast cites paragraphs 24, 25 and 59 of the Amended Complaint as examples of "collusion." *See* Cmplt ¶ 24 (Comcast, Villares and Gonin intentionally mislead Plaintiffs into believing that there was no further interest in the joint venture); ¶ 25 (Comcast, Villares and Gonin intentionally concealed their negotiations from Plaintiffs); ¶ 59 (Comcast conspired with and induced Villares to breach his fiduciary duty to Plaintiffs). For purposes of this motion only, I will assume that these paragraphs sufficiently allege "collusion" between Comcast and Villares.

breaches a contract. There generally is a purpose for the breach and that purpose is often, if not always, a financial benefit to the breaching party. Thus, the "but for" analysis cannot turn on the breaching party's self-interest which is ever present. Similarly, collusion between the breaching party and the interfering party cannot be dispositive of the "but for" inquiry. To the contrary, the allegation of collusion coupled with the allegation of wrongful interference or inducement to breach, leads to the conclusion of tortious interference by the third-party. It must be remembered that at the pleading state, each allegation is presumed to be true and every *inference* is made in plaintiffs' favor. The reasonable inference, here, is that Comcast procured Villares' and Gonin's breach by offering a different and better partnership arrangement which eliminated plaintiffs from the equation.

██ The critical inquiry, therefore, is whether the breaching party would have breached its obligations without the involvement of the interfering party. Here, it cannot be said that Villares would have breached the Agreement with plaintiffs without Comcast's participation. First, it was Comcast who demanded to negotiate with only one representative from plaintiffs' camp. Even if this does not satisfy the "but for" test, it certainly facilitated Villares' breach by keeping plaintiffs in the dark. Furthermore, Comcast does not dispute that it continued negotiations with Villares and eventually entered into a joint venture. Therefore, without Comcast's participation in the alleged fraud, Villares would not have been able to breach the Agreement because there would not have been a joint venture partner to join.[7] Comcast's involvement as the undisclosed co-venturer with Villares was thus a condition precedent to Villares' breach. Because plaintiffs have sufficiently pled "but

for" causation with regard to their tortious interference with contract claim, Comcast's motion to dismiss this claim is denied.

██ This is not the case with plaintiffs' claim for tortious interference with business relations. Under New York law, "to prevail on a claim for tortious interference with prospective business relations, a plaintiff must demonstrate that the defendant interfered with business relations existing between a plaintiff and a third party, either with the purpose of harming the plaintiff or by means that are dishonest, unfair, or improper." *Volvo North America Corp. v. Men's Int'l Professional Tennis Council,* 857 F.2d 55, 74 (2d Cir.1988) (citation omitted).

██ Here, there is no distinction between plaintiffs' claims for tortious interference with contract and tortious interference with business relations. *Compare* Cmplt ¶ 33 ("Upon information and belief, Villares and Gonin would not have breached their agreement with Plaintiffs but for Comcast's interference.") *with* Cmplt ¶ 41 (same). Accordingly, plaintiffs' second cause action is dismissed because it is redundant of their first cause of action. *See* Fed.R.Civ.P. 12(f) (court may strike from any pleading any "redundant, immaterial, impertinent, or scandalous matter"); *see also Aramony v. United Way of America,* 949 F.Supp. 1080, 1084 (S.D.N.Y.1996) ("[P]laintiff may not plead the same claim more than once.").

**C. Conspiracy to Breach Fiduciary Duty**

██ It is well settled under New York law that there is no substantive tort of conspiracy. *See Goldstein v. Siegel,* 19 A.D.2d 489, 244 N.Y.S.2d 378, 382 (1st Dep't 1963). In order to state a claim for conspiracy, therefore, there must be alle-

---

**7.** Notably, Comcast does not argue that absent its participation in the alleged fraud, Villares would have entered into a joint venture with another company. Thus, cases such as *Sharma v. Skaarup Ship Management Corp.,*

699 F.Supp. 440, 447 (S.D.N.Y.1988), *aff'd,* 916 F.2d 820 (2d Cir.1990), where the party to the contract could have breached without the involvement of the interfering defendants, are distinguishable.

gations of an independent actionable tort. *See Guthartz v. City of New York,* 84 A.D.2d 707, 443 N.Y.S.2d 841, 842 (1st Dep't 1981). The elements for inducing or participating in a breach of fiduciary duty are: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach. *See Whitney v. Citibank, N.A.,* 782 F.2d 1106, 1115 (2d Cir.1986).

■■■■ Comcast argues that it cannot be held liable for conspiracy to breach fiduciary duty because Villares did not owe plaintiffs a fiduciary duty in the first place. It is true that " '[a] conventional business relationship, *without more,* does not become a fiduciary relationship by mere allegation.' " *Compania Sud–Americana de Vapores, S.A. v. IBJ Schroder Bank & Trust Co.,* 785 F.Supp. 411, 425 (S.D.N.Y. 1992) (quoting *Oursler v. Women's Interart Cent., Inc.,* 170 A.D.2d 407, 566 N.Y.S.2d 295, 297 (1st Dep't 1991)) (emphasis added). Moreover, "where parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Id.* (citation omitted).

■■■■ To come within this rule, Comcast characterizes the Agreement between plaintiffs and Villares as a "finder's fee agreement." This characterization, however, is not a foregone conclusion. Perhaps the Agreement in issue should more properly be characterized as a "co-venturer agreement." [8] If that were the case, Villares and plaintiffs, as joint venturers, would "owe each other a duty of 'finest loyalty' and honesty." *Gramercy Equities Corp. v. Dumont,* 72 N.Y.2d 560, 534 N.Y.S.2d 908, 912, 531 N.E.2d 629 (1988)

(quoting *Meinhard v. Salmon,* 249 N.Y. 458, 463–64, 164 N.E. 545 (1928)). I need not decide this issue as Villares appeared to owe plaintiffs a fiduciary duty, but for an entirely different reason.

■■■■ Plaintiffs have alleged that they placed a special trust and confidence in Villares to negotiate on their behalf. *See* Cmplt ¶ 17. This was done after Comcast demanded to negotiate with only one party. By entrusting Villares with this position, plaintiffs became completely dependent on him to negotiate on their behalf in good faith. Villares accepted this position without condition. Accordingly, Villares' position as the sole representative of plaintiffs created a fiduciary relationship between them regardless of whether their Agreement is labeled a finder's fee or co-venturer agreement.

Having satisfied the underlying tort element for conspiracy to breach fiduciary duty, I turn to Comcast's argument that plaintiffs' conspiracy to breach fiduciary duty claim is duplicative of their breach of fiduciary duty claim and should be dismissed on this ground. Comcast relies on *Ferber v. Ehrlich,* 93 Civ. 818, 1994 WL 132168, at *9 (S.D.N.Y. Apr. 14, 1994), where the court held that when "[n]o facts are alleged that distinguish the conspiracy to breach [defendant A's] fiduciary duty from the separate claim that [defendant A] breached his fiduciary duty to plaintiff ... [t]he conspiracy claim fails to state a claim upon which relief can be granted." Without opining on whether this holding is correct, I note that here plaintiffs did allege facts that distinguish the conspiracy claim from the underlying breach. Specifically, plaintiffs allege that "Comcast was fully informed of the above-described relationship between Plaintiffs, Villares and Gonin, and the fact that Villares was negotiating on behalf of himself, Gonin and

---

8. Under New York law, a joint venture must "contain each of four elements: (1) agreement between the parties to create a joint venture; (2) sharing of profits and losses; (3) joint control of the business; and (4) contri-

butions of property, skill or knowledge." *Precision Testing Labs., Ltd. v. Kenyon Corp. of America,* 644 F.Supp. 1327, 1348 (S.D.N.Y. 1986).

Plaintiffs." Cmplt ¶ 58. Plaintiffs have therefore properly pled a cause of action against Villares for his breach of fiduciary duty and a separate cause of action against Comcast for its role in inducing Villares' breach.[9] Consequently, Comcast's motion to dismiss this claim.is denied.

## IV. Conclusion

For the reasons stated above, Comcast's motion for summary judgment relating to the equitable tolling of the statute of limitations is denied. Also denied are Comcast's motions to dismiss plaintiffs' tortious interference with contract claim and conspiracy to breach fiduciary duty claim. Comcast's motion to dismiss plaintiffs' tortious interference with business relations is granted.

SO ORDERED.

---

**9.** This is not the case where the breaching defendants comprise the same set of defendants who are alleged to have conspired to breach their duty of loyalty. *See ESI, Inc. v. Coastal Power Prod. Co.*, 995 F.Supp. 419, 434 (S.D.N.Y.1998). In that case ESI's conspiracy claim was properly dismissed as duplicative of its breach of fiduciary duty because "conspiracy, in and of itself, is not a substantive tort." *Id.* (citation omitted). Nor is this the case where plaintiffs' conspiracy claim is duplicative of a claim for tortiously inducing a breach. *See Artco, Inc. v. Kidde, Inc.*, 88 Civ. 5734, 1989 WL 140284, at *7 (S.D.N.Y. Nov. 15, 1989). Here, plaintiffs' claim against Villares is for his breach and their claim against Comcast is for its participation in that breach. Thus, there is no overlapping of these two legally distinguishable claims.