EVEMeta, LLC v Siemens Convergence Creators Corp. (2019 NY Slip Op 04893)





EVEMeta, LLC v Siemens Convergence Creators Corp.


2019 NY Slip Op 04893


Decided on June 18, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 18, 2019

Gische, J.P., Webber, Kahn, Kern, JJ.


9665 651484/16

[*1]EVEMeta, LLC Plaintiff-Respondent-Appellant,
v
Siemens Convergence Creators Corporation, Defendant-Appellant-Respondent, Siemens Convergence Creators Holding GmbH, et al., Defendants.


Pepper Hamilton LLP, New York (Angelo A. Stio III of counsel), for appellant-respondent.
Hughes Hubbard & Reed LLP, New York (Hagit Muriel Elul of counsel), for respondent-appellant.



Order, Supreme Court, New York County (Eileen Bransten, J.), entered on or about October 5, 2018, which, to the extent appealed from as limited by the briefs, denied the part of defendant Siemens Convergence Creators Corporation's motion pursuant to CPLR 3211(a)(7) to dismiss as against it the claims for tortious interference with contract, tortious interference with prospective economic advantage, unfair competition, punitive damages, and attorneys' fees, and granted the part of the motion seeking to dismiss as against it the claims for fraudulent misrepresentation, fraudulent concealment, and civil conspiracy, unanimously modified, on the law, to grant the motion as to the claims for tortious interference with prospective economic
advantage and attorneys' fees, and otherwise affirmed, without costs.
The complaint states a cause of action for tortious interference with contract by alleging that defendant Siemens was aware of the Master Services Agreement between plaintiff and defendant Synacor, Inc. and caused Synacor to breach the agreement and that the breach resulted in loss of revenue to plaintiff (see Lama Holding Co. v Smith Barney, 88 NY2d 413, 424 [1996]).
Contrary to Siemens's contentions, the complaint adequately alleges that the Master Services Agreement would not have been breached "but for" Siemens's conduct (see Carlyle, LLC v Quik Park 1633 Garage LLC, 160 AD3d 476 [1st Dept 2018]). In an effort to show that Synacor was independently predisposed to breach the agreement, Siemens argues that the relevant events began in December 2015, when Synacor asked plaintiff about renegotiating pricing. However, Siemens neglects to mention that the complaint alleges that Synacor's interest in renegotiating pricing — the first step in the alleged chain of events that led to plaintiff's exclusion from the trilateral arrangement — resulted from Siemens's improper disclosure of pricing information, allegedly in violation of the Software Distribution Agreement. There are no allegations in the complaint that would establish or suggest that Synacor would have raised questions about pricing if Siemens had not engaged in improper disclosure of the information.
Moreover, the complaint alleges that Synacor, having already invested a year in developing and marketing Siemens's direct video streaming service (known as "over-the-top" or OTT platform), could not have obtained continued rights to sell it but for Siemens's active participation in the scheme to cut plaintiff out of the business and that, had Siemens not agreed to supply the OTT platform to Synacor outside of the back-to-back contract structure with plaintiff, Synacor would not have breached the Master Services Agreement. At a minimum, and particularly at this pleading stage, the inference can reasonably be drawn from these allegations that Siemens approached Synacor with pricing information and offered a "different and better partnership arrangement which eliminated plaintiff[] from the equation" (see Antonios A. [*2]Alevizopoulos & Assoc., Inc. v Comcast Intl. Holdings, Inc., 100 F Supp 2d 178, 187 [SD NY 2000]).
The complaint also states a cause of action for unfair competition. It alleges that the defendants acted to misappropriate EVEMeta's(EveMeta) labors, skill, business judgment, knowhow and expenditures, after gaining their benefit through Evemeta's brokering of the Synacor deal and its use of
its technical knowledge and labor in developing an integrated OTT platform to permit Siemens's OTT product to operate on the systems of Synacor and its clients. Plaintiff alleges that its own proprietary integration and encoding technology was critical to ensure the functioning of the OTT platform, because neither Synacor nor Siemens possessed such capability. As the motion court observed, the inescapable inference from these statements in the complaint is that without Evemeta's knowhow, Siemens and Synacor would not have been able to proceed with the project. Granting the plaintiff every possible favorable inference (Leon v Martinez, 84 NY2d 83, 87-88 [1994]), at this pleadings stage, the complaint states a claim for unfair competition. Moreover, contrary to the argument advanced by defendant Siemens, the parties' Software Distribution Agreement does not conclusively establish that the encoding software is not "distributor work product" that belongs to plaintiff and not to Siemens.
However, the remaining tort claims fail to state causes of action. The tortious interference with prospective economic advantage claim does not allege conduct directed at the parties with whom plaintiff claims to have had potential relationships (see Carvel Corp. v Noonan, 3 NY3d 182, 192 [2004]; DeLaurentis v Malley, 161 AD3d 514 [1st Dept 2018]).
The court correctly dismissed the fraudulent misrepresentation and fraudulent concealment claims as duplicative of the breach of contract claim. These claims arise from the very allegations that underlie the contract claim — allegations that defendants were insincere about the nature of the contractual arrangement for the future (see First Bank of Ams. v Motor Car Funding, 257 AD2d 287, 291-292 [1st Dept 1999]). In particular, like the contract claim, these fraud claims rest on allegations that Siemens negotiated in secret with Synacor to cut plaintiff out of the business and failed to disclose to plaintiff that it was not merely negotiating with Synacor an amendment concerning a potential change of control but was colluding with Synacor to eliminate plaintiff from the business.
The conspiracy claim was correctly dismissed because New York does not recognize an independent cause of action in tort for conspiracy (Waggoner v Caruso, 68 AD3d 1, 6 [1st Dept 2009], affd 14 NY3d 874 [2010]). Moreover, the underlying tort alleged in the conspiracy claim is fraud, and the fraud claims were correctly dismissed (see Williams v Williams, 149 AD3d 1145 [2d Dept 2017], lv denied 30 NY3d 913 [2018]; Blanco v Polanco, 116 AD3d 892, 896 [2d Dept 2014]).
As the claim of tortious interference with contract was correctly sustained, plaintiff may demand punitive damages. However, the claim for attorneys' fees should be dismissed. Plaintiff cites no statute or contract provision that entitles it to attorneys' fees (see Chapel v Mitchell, 84 NY2d 345 [1994]). In Jeffries Avlon, Inc. v Gallagher (149 Misc 2d 552, 553 [Sup Ct, NY County 1991]), fees were contemplated as part of an award for punitive damages for a tort of which malice was an element. Malice is not an element of tortious interference with contract [*3](Shared Communications Servs. of ESR, Inc. v Goldman Sachs & Co., 23 AD3d 162 [1st Dept 2005]).
We have considered the parties' remaining arguments for affirmative relief and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 18, 2019
CLERK